PEOPLE v CALLON

Docket No. 234421. Submitted February 10, 2003, at Detroit. Decided April
15, 2003, at 9:15 A.M. Leave to appeal sought.

Lee L. Callon was convicted by a jury in Oakland Circuit Court, Rich-
ard D. Kuhn, J., of operating a vehicle while under the influence of
intoxicating liquor or while having a blood alcohol content of 0.10
grams or more per 100 milliliters of blood (OUIL/UBAL), MCL
257.625(1). The defendant was stopped by a police officer on Octo-
ber 9, 1999, for erratic driving and speeding. The defendant refused
a breath test, and his blood was later drawn at a local hospital pur-
suant to a search warrant, MCL 257.625d(1). On October 1, 1999,
1998 PA 350 became effective, pursuant to which the defendant's
OUIL/UBAL was enhanced from a misdemeanor to a felony because of
the defendant's two prior convictions for impaired driving, MCL
257.625(3). The defendant appealed, raising a number of issues
regarding his conviction and sentencing.

The Court of Appeals *held*:

1. Public Act 350 of 1998, which modified the definition of "prior
conviction" in MCL 257.625 to include prior convictions for
impaired driving under MCL 257.625(3) for purposes of enhancing a
conviction of OUIL/UBAL from a misdemeanor to a felony, did not
violate the Ex Post Facto Clauses of the Michigan and United
States Constitutions, because the legal consequences of the amend-
ment (an enhanced OUIL/UBAL conviction), affected the defendant
only as a result of acts he committed after the effective date of the
amendment. The defendant was arrested for OUIL on October 9,
1999, the effective date of 1998 PA 350 was October 1, 1999. Thus,
the defendant's arrest occurred after the amendment became effec-
tive, and there was no constitutional violation.

2. The defendant's argument, that the trial court erred in failing
to suppress the defendant's blood-test results because his blood
was not drawn by a licensed physician or an individual operating
under the delegation of a licensed physician as required by MCL
257.625a(6)(c), fails because subsection 625a(6) does not apply
where, as in this case, blood is seized pursuant to a search warrant
under MCL 257.625d(1). Even if subsection 625a(6) did apply, there
was sufficient evidence from which the trial court could conclude

that the phlebotomist who drew the defendant's blood had the task properly delegated to him by a licensed physician.

3. The trial court did not abuse its discretion in finding good cause under MCL 767.40a(1) to allow the prosecutor to amend her witness list during opening arguments to include a key prosecution witness, because the witness was known to the defendant, had been subject to direct and cross-examination at the preliminary examination, the defendant had not requested a continuance, and no unfair prejudice resulted to the defendant.

4. Although the prosecutor improperly argued that the defendant could have performed his own testing of the blood to verify whether it was his, a timely objection and cautionary instruction could have cured any possible prejudice the remark could have caused. In fact, any prejudice was cured by the trial court's subsequent instructions to the jury regarding the presumption of innocence and the burden of proof. The defendant's argument that the prosecutor's statements shifted the burden of proof to the defendant is meritless because the prosecutor merely argued that the evidence was undisputed, which argument attacked the credibility of the defendant's theory that there had been a mistake in the custody or testing of the blood.

5. The defendant's unpreserved argument, that the trial court erred by sentencing him for felony OUIL because the trial court did not find by a preponderance of evidence that the defendant had prior convictions under MCL 257.625(16), fails because the defendant never challenged the accuracy of the prior convictions below, and in fact relied on the convictions in pleadings before the court. Moreover, the record reveals that the requirements of subsection 625(16) were met where the defendant stipulated to the prior convictions, admitted at sentencing that he had two prior drunken driving convictions, and the defendant's driving record was provided to the trial court.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people.

*Brian Dailey Law Firm, P.C.* (by *Amy M. Hopp*), for the defendant.

Before: MARKEY, P.J., and SMOLENSKI and METER, JJ.

PER CURIAM. Defendant Lee L. Callon appeals by right his conviction by a jury of operating a vehicle under the influence of intoxicating liquor or while having a blood alcohol content of 0.10 grams or more per 100 milliliters of blood (OUIL/UBAL), MCL 257.625(1). Defendant was sentenced to two years probation, with 273 days in jail, as a third-time offender, MCL 257.625(8)(c), but the trial court stayed the sentence and granted defendant bond pending appeal. We affirm.

## I. THE BASIC FACTS

The facts of the present case are simple. Defendant was stopped on October 9, 1999, by Farmington Hills Police Officer Matthew Parsons for erratic driving and speeding. Defendant was arrested for OUIL after an investigation that included the administration of field sobriety tests. When defendant did not take an offered breath test, Parsons obtained a search warrant for his blood. Parsons transported defendant to Botsford Hospital where Daniel Quinn, a hospital phlebotomist, executed the search warrant in Parsons' presence, drawing two vials of defendant's blood that Parsons sealed in a Michigan State Police blood-urine test kit and mailed to the Michigan State Police crime lab.[1]

Kimberly Dailey, a Michigan State Police forensic scientist, testified that as a forensic scientist she analyzes blood and urine for the presence of drugs and

---

[1] Quinn also drew a third vial of blood from defendant but it was not provided to the police.

alcohol. After the trial court accepted Dailey as an expert in determining blood alcohol content, she testified that she conducted various tests on the blood sample the police seized from defendant, obtaining a result of 0.16 grams of alcohol per 100 milliliters of blood.

## II. THE EX POST FACTO CHALLENGE

Defendant first argues that 1998 PA 350, effective October 1, 1999, which included impaired-driving convictions in the definition of "prior conviction" that may be used to enhance a conviction of OUIL/UBAL to a felony, operates as an ex post facto law. Interpretation of constitutional provisions and statutory construction are both questions of law we review de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998). We conclude that defendant's argument has no merit because the legal consequences of 1998 PA 350 attached to defendant only as a result of acts committed by defendant after the effective date of the statute. *Carmell v Texas*, 529 US 513, 519-520; 120 S Ct 1620; 146 L Ed 2d 577 (2000); *People v Harvey*, 174 Mich App 58, 61; 435 NW2d 456 (1989).

Before his arrest on October 9, 1999, defendant had been convicted of impaired driving[2] on April 6, 1993, and of operating with an unlawful blood alcohol level on May 25, 1995. After his conviction of OUIL/UBAL,

---

[2] At the time of the instant offense, and each of defendant's prior convictions, MCL 257.625(3) prohibited operating a vehicle while "the person's ability to operate the vehicle is visibly impaired" due to consumption of intoxicating liquor, a controlled substance, or a combination thereof. Before 1991, the offense of impaired driving was found in MCL 257.625b. See *People v Pomeroy (On Rehearing)*, 419 Mich 441, 446; 355 NW2d 98 (1984), overruled in part *People v Wood*, 450 Mich 399, 405; 538 NW2d 351 (1995).

defendant was subject to MCL 257.625(8)(c), which provides in part, "[i]f a person is convicted of violating subsection (1), all of the following apply: . . . (c) If the violation occurs within 10 years of 2 or more prior convictions, the person is guilty of a felony . . . ." Before October 1, 1999, a prior conviction for impaired driving could not be used to enhance a conviction for OUIL/UBAL, MCL 257.625(6)(f), as amended by 1991 PA 98. Rather, the conviction could only be used to enhance a subsequent conviction of impaired driving from a ninety-day misdemeanor to a one-year misdemeanor, MCL 257.625(10), as amended by 1991 PA 98. Defendant argues that 1998 PA 350, effective October 1, 1999, operates as an ex post facto law because it modified the definition of "prior conviction" to include a prior conviction of impaired driving under MCL 257.625(3) for purposes of enhancing a subsequent conviction of OUIL/UBAL, MCL 257.625(1), to a felony conviction, MCL 257.625(8)(c). The statute now provides, in part:

> (23) . . . as used in this section, "prior conviction" means a conviction for any of the following, whether under a law of this state, a local ordinance substantially corresponding to a law of this state, or a law of another state substantially corresponding to a law of this state:
>
> (a) . . . a violation or attempted violation of subsection (1), (3), (4), (5), (6), or (7), section 625m, former section 625(1) or (2), or former section 625b. [MCL 257.625(23), as amended by 1998 PA 350.]

Ex post facto laws are prohibited by both the Michigan Constitution, Const 1963, art 1, § 10 ("No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted."), and United States Constitution, US Const, art I, § 10 ("No state

shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."). Michigan does not interpret its constitutional provision more expansively than its federal counterpart. *Attorney General v Pub Service Comm*, 249 Mich App 424, 434; 642 NW2d 691 (2002); *People v Pennington*, 240 Mich App 188, 191 n 1; 610 NW2d 608 (2000). Both ex post facto clauses are designed to secure substantial personal rights against arbitrary and oppressive legislation, *People v Russo*, 439 Mich 584, 592; 487 NW2d 698 (1992); *Pennington, supra*, and to ensure fair notice that conduct is criminal, *People v Stevenson*, 416 Mich 383, 396; 331 NW2d 143 (1982); *People v Davis*, 181 Mich App 354, 357; 448 NW2d 842 (1989).

The seminal case interpreting the federal Ex Post Facto Clause is *Calder v Bull*, 3 US 386, 390; 1 L Ed 648 (1798), in which Justice Chase described four categories of ex post facto laws. The Supreme Court recently reaffirmed these four categories in *Carmell, supra*, quoting Justice Chase's opinion in *Calder, supra*, as follow:

> "I will state *what laws* I consider *ex post facto laws*, within the *words* and the *intent* of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates a crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*." [*Carmell, supra* at 522, quoting *Calder, supra* at 390 (emphasis in original).]

See also *Collins v Youngblood*, 497 US 37, 42, 49; 110 S Ct 2715; 111 L Ed 2d 30 (1990) (finding departures from Justice Chase's original understanding of the Ex Post Facto Clause to be unjustified), and *Stevenson*, *supra* at 396 (finding that *In re Hoffman*, 382 Mich 66, 71 n 1; 168 NW2d 229 (1969), adopted Justice Chase's definition of ex post facto laws by reference). All ex post facto laws share two elements: (1) they attach legal consequences to acts before their effective date, and (2) they work to the disadvantage of the defendant. *Weaver* v *Graham*, 450 US 24, 29; 101 S Ct 960; 67 L Ed 2d 17 (1981); *People v Slocum*, 213 Mich App 239, 243; 539 NW2d 572 (1995).

Defendant first argues the amended definition of "prior conviction" is an ex post facto law within the meaning of the second *Calder* category, a "law that aggravates a crime, or makes it greater than it was, when committed," and the third *Calder* category, a "law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Defendant's argument fails. " 'The critical question [for an *ex post facto* violation] is whether the law changes the legal consequences of acts completed before its effective date.' " *Carmell*, *supra* at 520, quoting *Weaver*, *supra* at 31. Here, the amended statute did not attach legal consequences to defendant's prior impaired-driving conviction, but attached legal consequences to defendant's future conduct of driving under the influence or with an unlawful blood alcohol level. " '[R]ecidivist statutes . . . do not change the penalty imposed for the earlier conviction.' " *People v Reichenbach*, 459 Mich 109, 124-125; 587 NW2d 1 (1998), quoting *Nichols v United States*, 511 US 738, 747; 114 S Ct 1921; 128 L Ed 2d

745 (1994). See also *People v Tice*, 220 Mich App 47, 51; 558 NW2d 245 (1996) (holding that MCL 750.224f prohibiting possession of a firearm by a felon was not an ex post facto law when applied to the defendant whose felony conviction occurred before the effective date of the statute, because punishment was assessed for conduct committed after the effective date of the statute), and *Harvey, supra* at 61 (no ex post facto violation occurred by applying the parental kidnapping statute, MCL 750.350a, to the defendant's retention of a child in violation of a divorce decree for more than twenty-four hours after the effective date of the new statute).

Similarly, defendant's argument that his impaired-driving conviction is an element of OUIL/UBAL, third offense, must also fail. First, defendant's reliance on *People v Bewersdorf*, 438 Mich 55, 68; 475 NW2d 231 (1991), is misplaced because in that case our Supreme Court addressed MCL 257.625 as it existed before its amendment by 1991 PA 98, which made the existence of prior convictions only part of a sentence-enhancement scheme. See *People v Weatherholt*, 214 Mich App 507, 511-512; 543 NW2d 35 (1995) (conflict-resolution panel), and *People v Fish (On Second Remand)*, 220 Mich App 569; 560 NW2d 76 (1996). Second, the conduct for which defendant is being punished is driving while intoxicated or with an unlawful blood alcohol level after having fair notice that the statute had been amended to permit enhancement of an OUIL/UBAL conviction with a prior impaired-driving conviction. Defendant's argument, in essence, is that the quantum of evidence necessary to convict of OUIL/UBAL, third offense (the elements), was lessened by the amendment (the fourth *Calder* category).

However, the lesser evidentiary burden applies only to future conduct and, therefore, does not violate the Ex Post Facto Clause. *Carmell, supra* at 519.

Moreover, our Supreme Court has rejected a similar ex post facto challenge to a statutory amendment that permitted enhancement with a prior conviction not previously included in the definition of a prior offense. In *People v Miller*, 357 Mich 400, 402; 98 NW2d 524 (1959), the defendant was charged with violating MCL 257.625 by driving in a drunken state on February 23, 1957. The defendant was sentenced as a second-time offender because a 1954 amendment added violations of local ordinances substantially similar to the Motor Vehicle Code to the definition of second or subsequent conviction, thus permitting the defendant's 1949 city-ordinance conviction for drunken driving to elevate his 1957 conviction to a second offense. *Miller, supra* at 409-410. Our Supreme Court rejected the defendant's ex post facto challenge, opining:

> Heavier penalties for a second offense are well known to the law. They are in no manner *ex post facto*, nor do such amendments as we have before use [sic] have a retroactive effect. It is the subsequent offense that is punished more harshly, not the first. [*Id.* at 410.]

Similar ex post facto challenges to habitual-offender statutes have been rejected by analogy. *People v Palm*, 245 Mich 396, 402-403; 223 NW 67 (1929). See also *In re Brazel*, 293 Mich 632, 636-637; 292 NW 664 (1940) (use of convictions obtained before the adoption of the habitual-offender act did not offend the Ex Post Facto Clause), and to the same effect, *Gryger v Burke*, 334 US 728, 732; 68 S Ct

1256; 92 L Ed 1683 (1948) (reviewing Pennsylvania's habitual-offender act). Simply put, there is no retroactive application of the law where a prior conviction is used to enhance the penalty for a new offense committed after the effective date of the statute. Therefore, there was no violation of the Ex Post Facto Clauses of the Michigan or United States Constitutions in this case.

### III. THE SEARCH-WARRANT CHALLENGE

Next, defendant argues that the trial court erred by not suppressing the blood-test results because defendant's blood was not drawn by "a licensed physician, or an individual operating under the delegation of a licensed physician" as required by the search warrant, which incorporated MCL 257.625a(6)(c). We disagree. Ordinarily, a trial court's ruling on a motion to suppress evidence is reviewed with deference and will not to be disturbed unless clearly erroneous, *People v Hamilton*, 465 Mich 526, 529; 638 NW2d 92 (2002), but where admissibility depends on a question of law, our review is de novo, *id.* at 529-530; *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999). Clear error exists where the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Parker*, 230 Mich App 337, 339; 584 NW2d 336 (1998).

After defendant was arrested for OUIL, he refused Officer Parsons' request to take a breath test, so Parsons obtained a search warrant for defendant's blood. Defendant does not contest that probable cause existed both for his arrest and the issuance of the search warrant, which provided: "it is further ordered that the said (blood/urine) sample be taken, pursuant

to MCLA 257.625a(6)(c) at *BOTSFORD* hospital." The referenced statute provides:

> A sample or specimen of urine or breath shall be taken and collected in a reasonable manner. Only a licensed physician, or an individual operating under the delegation of a licensed physician under section 16215 of the public health code, 1978 PA 368, MCL 333.16215, qualified to withdraw blood and acting in a medical environment, may withdraw blood at a peace officer's request to determine the amount of alcohol or presence of a controlled substance or both in the person's blood, as provided in this subsection. Liability for a crime or civil damages predicated on the act of withdrawing or analyzing blood and related procedures does not attach to a licensed physician or individual operating under the delegation of a licensed physician who withdraws or analyzes blood or assists in the withdrawal or analysis in accordance with this act unless the withdrawal or analysis is performed in a negligent manner. [MCL 257.625a(6)(c).]

Defendant moved in the trial court to suppress the blood-test results, claiming that defendant's blood was not drawn by a licensed physician or individual delegated by a licensed physician in compliance with MCL 257.625a(6)(c). In rejecting defendant's motion, the trial court reasoned:

> Although the technician testified that no doctor told him to withdraw Defendant's blood, it is clear that there was a doctor present in the room when Defendant's blood was drawn and that the doctor signed off on the medical record. Taking blood samples falls within the job description of a medical technician. Further, the fact that the doctor was present and signed the record supports delegation and supervision. Verbal delegation is not required by the statute.

Defendant's argument fails for several reasons. First, defendant refused a chemical test offered pursuant to MCL 257.625a(6); instead, his blood was

obtained pursuant to a search warrant as authorized by MCL 257.625d(1). Therefore, MCL 257.625a(6)(c), the implied-consent statute, does not govern admissibility of the test results. *People v Snyder*, 181 Mich App 768, 770; 449 NW2d 703 (1989); *People v Hempstead*, 144 Mich App 348, 352-353; 375 NW2d 445 (1985). See also *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999) (because the defendant was not under arrest, the implied-consent statute was not implicated). Constitutional principles govern the admissibility of test results from a blood sample obtained by consent. See *Manko v Root*, 190 Mich App 702, 704-705; 476 NW2d 776 (1991) (the implied-consent statute is inapplicable to blood seized pursuant to a search warrant). Therefore, the rules of evidence, as limited by constitutional principles, govern the admissibility of blood-test results obtained under a search warrant. *Borchard-Ruhland, supra* at 293; *People v Campbell*, 236 Mich App 490, 503-504; 601 NW2d 114 (1999). Because defendant does not argue that the search warrant was unsupported by probable cause or otherwise suffered from a constitutional deficiency, and because the alleged deviations from MCL 257.625a(6)(c) do not implicate the relevancy or reliability of the blood-test results, exclusion of the evidence was not required. *People v Fosnaugh*, 248 Mich App 444, 450; 639 NW2d 587 (2001); *People v Jenne*, 168 Mich App 518, 522; 425 NW2d 116 (1988).

Second, even if MCL 257.625a(6)(c) applied to this case because of its incorporation in the search warrant, the trial court did not err by concluding it had not been violated. The statute requires that blood be drawn only by "a licensed physician, or an individual operating under the delegation of a licensed physi-

cian" under MCL 333.16215, which authorizes licensed physicians to delegate selected acts, tasks, or functions to individuals who are qualified by education, training, or experience to perform the acts, tasks, or functions within the scope of the practice of the licensee's profession and that will be performed under the licensee's supervision. The Public Health Code defines "supervision" as requiring the licensee to be continuously available directly or through electronic means, to regularly review, consult, and educate the supervised individual, and further requires that procedures and a drug protocol be established. MCL 333.16109. Thus, the statute does not require direct supervision by a licensed physician of the qualified person to whom the task of drawing blood has been delegated, nor does the statute require that a licensed physician specifically delegate an individual to draw blood in each individual case. Rather, the statute permits delegation of "acts, tasks or functions," in this case the function of drawing blood, the task of phlebotomy. This interpretation is consistent with the plain language of the statute, *Borchard-Ruhland, supra* at 284, and with the ordinary definition of "delegation." The *Random House Webster's College Dictionary* (1997) defines "delegation" as "the state of being delegated," and "delegate," as "to commit (powers, functions, etc.) to another as agent."

In this case, there was ample evidence from which the trial court could conclude that Daniel Quinn, the phlebotomist on duty in the emergency room of Botsford Hospital, was "operating under the delegation of a licensed physician" when he withdrew blood from defendant. A doctor was present in the emergency room of the hospital when Officer Parsons

arrived and presented the search warrant. After the doctor directed Parsons and defendant to a room, Quinn drew defendant's blood. Quinn's testimony established that he had been employed by the hospital for several years and regularly engaged in assisting patient care, including acting as a phlebotomist on numerous occasions. Further, one doctor dictated and signed a report concerning the blood draw. Nothing in the statute requires that a physician specifically directed Quinn to draw defendant's blood, only that he be delegated to perform that task. The trial court did not clearly err by ruling that the statute had not been violated. *Jenne, supra* at 521.

In summary, defendant's blood was drawn pursuant to a valid search warrant, and the statutory provisions regarding implied consent are inapplicable. However, even if MCL 257.625a6(c) applied to this case, the trial court did not clearly err by finding that it had been complied with, because the statute does not require verbal direction or immediate supervision of phlebotomists delegated to withdraw blood. Finally, the alleged statutory violation does not implicate the reliability or relevancy of the blood testing performed in this case, and, therefore, the evidence was properly admitted. *People v Wager*, 460 Mich 118, 126; 594 NW2d 487 (1999); *Fosnaugh, supra* at 450.

### IV. AMENDMENT TO THE PROSECUTOR'S WITNESS LIST

Next, defendant argues that the trial court abused its discretion when it permitted the prosecutor to amend her trial witness list during the course of opening statements to add as a trial witness Kimberly Dailey, the state police laboratory technician who tested defendant's blood. The trial court's decision to

permit the prosecutor to add or delete witnesses to be called at trial is reviewed for an abuse of discretion, *People v Burwick*, 450 Mich 281, 291; 537 NW2d 813 (1995); *People v Herndon*, 246 Mich App 371, 402; 633 NW2d 376 (2001). An abuse of discretion is found when the trial court's decision is so grossly contrary to fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias, or when an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling, *People v Gadomski*, 232 Mich App 24, 32-33; 592 NW2d 75 (1998). We conclude that the trial court did not abuse its discretion by allowing the late endorsement of a critical prosecution witness where the witness was known to the defense, had been subjected to cross-examination at the preliminary examination, and where no continuance was requested and no unfair prejudice resulted to defendant. MCL 767.40a(4); *Herndon, supra* at 403; *Gadomski, supra.*

There is no question that the prosecutor violated both MCL 767.40a(1), "[t]he prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers," and MCL 767.40a(3), "[n]ot less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." However, the Legislature established a statutory scheme whereby the prosecutor is required to provide early notice to the accused of potential witnesses, *Burwick, supra* at 288-289, and reasonable

assistance to produce witnesses upon request, *id.* at 289; MCL 767.40a(5). See also *Gadomski, supra* at 35-36 ("The prosecution's duty under the statute is to provide notice of known witnesses and reasonable assistance to locate witnesses on a defendant's request."), and *People v Koonce,* 466 Mich 515, 523; 648 NW2d 153 (2002) (The prosecutor's statutory duty to provide "reasonable assistance" applies even to a witness alleged to be an accomplice.). Here, the underlying purpose of the statute, notice to the accused of potential witnesses, was satisfied because Dailey's identity was disclosed through the toxicology report the prosecutor furnished the defense, and the substance of her testimony was discovered through direct testimony and cross-examination at the preliminary examination.

Whether the Legislature intended a statutory violation like that in the present case to be a bar to the admission of relevant evidence is a question of legislative intent, *Burwick, supra* at 287. The answer, found in the plain language of the statute, is no, *id.*; *Koonce, supra* at 518. The statute clearly vests the trial courts of this state with the discretion to permit the prosecution to amend its witness list at any time. *Burwick, supra* at 289, 291. "The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4). The trial court did not abuse its discretion by finding "good cause" for granting leave to the prosecutor to amend her notice of witnesses based on "inadvertence" of the prosecutor to list Dailey, a witness critical to the prosecutor's case. An unprejudiced person considering the

facts on which the trial court acted would be unable to say there was no justification or excuse for the ruling. *Gadomski, supra* at 33. Mere negligence of the prosecutor is not the type of egregious case for which the extreme sanction of precluding relevant evidence is reserved. *Burwick, supra* at 294.

Moreover, to establish that the trial court abused its discretion, defendant must demonstrate that the court's ruling resulted in prejudice. *People v Williams*, 188 Mich App 54, 59-60; 469 NW2d 4 (1991). The record here fails to establish any unfair prejudice to the defense. Defense counsel's assertion that he would have subjected the seized blood to DNA testing to verify its authenticity as defendant's blood is specious. Counsel indicated at the preliminary examination that the defense intended to test the seized blood, pursued discovery to obtain the blood sample for that purpose, and did not contradict the prosecutor's averment that a vial of the seized blood was furnished to an independent expert at defense counsel's request. Further, because the statute permits a prosecutor to file his trial witness list thirty days before trial, and permits amendment on leave of the trial court at any time for good cause, defense counsel could not rely on the prosecutor's negligence to preclude testimony of a known, essential prosecution witness. Rather, the record indicates that by waiting to object until after the jury was sworn and the prosecutor started her opening statement, defense counsel was engaging in the "gamesmanship" that MCL 767.40a was designed to preclude. *Burwick, supra* at 290. In sum, the trial court did not abuse its discretion by finding good cause to permit the prosecutor to amend her witness list, and defendant has not

demonstrated unfair prejudice that would warrant a new trial. MCL 767.40a(4); *Herndon, supra* at 403.

## V. PROSECUTORIAL MISCONDUCT

Defendant asserts that the prosecutor improperly argued to the jury that he could have performed his own testing of the blood tested by the police to verify whether it was his, and that the prosecutor's closing argument denied him a fair trial by shifting the burden of proof to him. We find that defendant failed to preserve this issue by making a timely, contemporaneous objection and request for a curative instruction. Instead, defendant waited until the trial court had completed its instructions to the jury, and then moved for a mistrial. Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994); *People v Kelly*, 231 Mich App 627, 638; 588 NW2d 480 (1998). Because the alleged error was not preserved by a contemporaneous objection and a request for a curative instruction, appellate review is for plain (outcome-determinative) error. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001); *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000). Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999); *Schutte, supra* at 720. Further, we cannot find error requiring reversal where a curative instruc-

tion could have alleviated any prejudicial effect. *Watson, supra; Schutte, supra* at 721.

When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *People v Bahoda,* 448 Mich 261, 267; 531 NW2d 659 (1995); *People v Noble,* 238 Mich App 647, 660; 608 NW2d 123 (1999). Further, the propriety of a prosecutor's remarks will depend upon the particular facts of each case. *People v Johnson,* 187 Mich App 621, 625; 468 NW2d 307 (1991). In addition, a prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *Schutte, supra* at 721. Furthermore, otherwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense. *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977); *Schutte, supra* at 721. Although a prosecutor may not argue a fact to the jury that is not supported by evidence, a prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence. *Bahoda, supra* at 282; *Schutte, supra* at 721.

In the instant case, the prosecutor's argument that the blood in the possession of the police was available to defendant for purposes of independent testing, while legally and factually accurate, was nonetheless unsupported by evidence adduced at trial. However, a timely objection and cautionary instruction could have cured any possible prejudice from the prosecutor's comments. *Kelly, supra* at 638; *People v Rivera,* 216 Mich App 648, 651-652; 550 NW2d 593 (1996). Moreover, the trial judge properly instructed

the jury regarding the presumption of innocence and burden of proof, and further instructed the jury that the attorneys' statements were not evidence, and that "[y]ou should only accept things that an attorney said that are supported by the evidence or by your own common sense and general knowledge." Thus, the trial court's instructions dispelled any prejudice arising from the prosecutor's comment, *Bahoda, supra* at 281; *People v Green,* 228 Mich App 684, 693; 580 NW2d 444 (1998), and defendant received a fair and impartial trial, *Watson, supra* at 586.

Defendant's argument that the prosecutor's statements shifted the burden of proof is without merit. The prosecutor merely argued that the evidence proved defendant's guilt beyond a reasonable doubt despite defendant's exculpatory version of events. *People v Nowack,* 462 Mich 392, 400; 614 NW2d 78 (2000). A prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment. *People v Perry,* 218 Mich App 520, 538; 554 NW2d 362 (1996). Here, the prosecutor did not shift the burden of proof; she merely attacked the credibility of a theory defendant advanced at trial that there was a mistake made in the custody or testing of the blood seized by the police. *People v Fields,* 450 Mich 94, 107, 115; 538 NW2d 356 (1995).

Finally, even if the comments by the prosecutor were prejudicial, reversal is not warranted because the alleged error was forfeited and did not result in the conviction of an actually innocent defendant, or seriously affect the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence. *Carines, supra* at 763-764; *Schutte, supra* at 720.

VI. PROOF OF DEFENDANT'S PRIOR CONVICTIONS

Finally, defendant argues that the trial court erred by sentencing him for felony OUIL because the court did not find by a preponderance of evidence that he had prior convictions. Defendant contends, therefore, that his conviction must be set aside and that he be resentenced for misdemeanor OUIL. We disagree. Defendant has failed to preserve this issue by objecting at or before sentencing to the accuracy of his prior convictions as alleged in the information (and presumed to be included in the presentence report). MCR 6.429(C); MCL 771.14(6); *People v McCrady*, 244 Mich App 27, 32; 624 NW2d 761 (2000); *People v Bailey (On Remand)*, 218 Mich App 645, 647; 554 NW2d 391 (1996). Moreover, defendant has not properly perfected his appeal of this issue by filing a copy of the presentence report with this Court, MCL 769.34(8)(b), and any other reports or documents that the trial court relied on at sentencing, MCL 769.34(8)(c). See, e.g., *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995) (failing to provide this Court with the relevant record waives further review). Alleged sentencing errors that have been not been preserved are reviewed for plain error affecting substantial rights. *McCrady, supra* at 32.

At the preliminary examination, the prosecutor showed defense counsel certified copies of prior convictions, and defense counsel stipulated that defendant was previously convicted of (1) operating while impaired on April 6, 1993, in 48th District Court and (2) operating with an unlawful blood alcohol level (UBAL) on May 25, 1995, in 51st District Court. Although defense counsel limited the stipulation to

"purposes of preliminary exam only," defendant referred to these same prior convictions in his circuit court motions to dismiss felony charges, specifically referring to the preliminary-examination stipulation. The prosecutor alleged the prior convictions in the original and amended informations, and defendant never challenged the accuracy of the prior convictions.

Defendant now argues on appeal that his prior convictions were not established by a preponderance of evidence at sentencing, and that the prosecutor did not meet the requirement of MCL 257.625(16) that prior convictions be established by one of three methods: (a) an abstract of conviction, (b) a copy of the defendant's driving record, or (c) an admission by the defendant. Defendant's argument fails.

In *Weatherholt, supra,* this Court construed subsections 11 and 12[3] of MCL 257.625, as amended by 1991 PA 98, and held that the Legislature made the existence of prior convictions only part of a sentence-enhancement scheme. This Court analogized enhancement of offenses under MCL 257.625 to enhancement under the habitual-offender act, and enhancement of drug offenses under the Public Health Code. *Weatherholt, supra* at 510-511. We concluded that the statute did not require separate findings of fact and that " 'due process neither compels a separate charge nor imposes trial-type evidentiary burdens on the sentencing process.' " *Id.* at 511, quoting *People v Eason,* 435 Mich 228, 244; 458 NW2d 17 (1990).

Our Supreme Court in *People v Walker,* 428 Mich 261, 267-268; 407 NW2d 367 (1987), established the

---

[3] Now codified at MCL 257.625 (14) and (16), respectively.

preponderance-of-evidence standard to determine *contested factual matters* at sentencing proceedings by adopting Standard 18-6.4(c) of the American Bar Association Standards for Criminal Justice (2d ed). However, it is incumbent on a defendant to first mount an effective challenge to invoke his right to a hearing on a contested fact at sentencing and, thus, the need for an evidentiary hearing with a finding by the trial court based upon the preponderance of evidence. *People v Ewing (After Remand)*, 435 Mich 443, 472; 458 NW2d 880 (1990) (BOYLE, J.); *Walker, supra* at 268. "Whether that requirement is satisfied with a flat denial of an adverse factual assertion, or whether an affirmative factual showing is required, will depend upon the nature of the disputed matter." *Walker, supra* at 268. Here, defendant never challenged the accuracy of the alleged prior convictions. Moreover, defendant did not challenge the accuracy of the presentence report, which the prosecutor avers also listed defendant's prior convictions. A presentence report is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997).

Moreover, the record here establishes that each of the three statutory methods of proving defendant's prior convictions was either readily at hand, or was provided to the trial court. The stipulation placed on the record at the preliminary examination was based on certified copies of convictions that would qualify as an abstract of conviction. MCL 257.625(16)(a). The defense stipulation incorporated into circuit court pleadings together with defendant's acknowledgement at sentencing of "two previous drunk driving convic-

tions," qualified as an admission by defendant. MCL 257.625(16)(c). Further, defendant's driving record was provided to the trial court at sentencing because the court noted defendant's lack of a conviction for driving without a license as a reason for granting bond pending appeal. MCL 257.625(16)(b). Thus, the record establishes that a defense challenge to defendant's prior convictions would have been futile. Plain error affecting defendant's substantial rights did not occur. *McCrady, supra* at 32.

We affirm defendant's conviction and sentence.