*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAYMOND JOHN-ORLO VANBUSKIRK,

        Defendant-Appellant.

UNPUBLISHED
May 12, 2022

No. 356564
Ionia Circuit Court
LC No. 2019-017934-FH

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

A jury convicted Raymond John-Orlo VanBuskirk of one count of felonious assault, MCL 750.82, and three counts of threatening an employee of a family independence agency with physical harm, MCL 750.81c(1), for threatening three Department of Health and Human Services (DHHS) employees both verbally and with a minivan. The jury also convicted VanBuskirk of two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), stemming from his interaction with troopers who responded to the scene. VanBuskirk contends that the trial court improperly denied his request to amend his witness list to add his chiropractor, abused its discretion in denying his motion for a new trial based on the prosecutor's belated production of dash-cam footage, and erroneously excluded VanBuskirk's prior consistent statements.

The trial court should have been more flexible in considering VanBuskirk's motion to add his chiropractor as a witness and should have recessed the trial to allow defense counsel to review the dash-cam footage when it was suddenly presented at trial, instead of excluding it. However, these errors had no impact on the convictions arising from VanBuskirk's encounter with the DHHS agents, only on the resisting and obstructing convictions. VanBuskirk was sentenced to concurrent terms of 90 days' jailtime for all the offenses, and has served that sentence. Because it is unlikely that a jury would reach a different result if a new trial were conducted with the requested witness and subject footage, we affirm.

## I. BACKGROUND

On August 30, 2019, VanBuskirk attended a court hearing in child protective proceedings that involved his stepdaughter and her two young sons. The children had been placed in

VanBuskirk's care, but the court ordered their removal that day. At that time, the four-year-old grandson was at school and the two-year-old was at home with a babysitter. VanBuskirk testified that he told the DHHS employees that he would have the babysitter transport the younger child to the school so the children could be picked up together. The DHHS employees claimed that VanBuskirk advised them that the younger child would be at his house.

Approximately an hour later, three DHHS employees went to VanBuskirk's home to collect the youngest child. The house sits at the end of a long driveway. Fields backed by woods lie beyond. The DHHS employees parked near the house and exited the vehicle. They recounted that VanBuskirk angrily stalked toward the vehicle, yelling for them to leave his property. The workers testified that VanBuskirk threatened that "he was fixing to get violent." They described that VanBuskirk held his shoulders up in an angry posture, with his arms bowed out to his sides and his hands clenched in fists. VanBuskirk testified that he simply told the workers that the children were not at the house. He also testified that he always held his shoulders up and chest out to alleviate shoulder pain caused by a motorcycle accident and that his hands were curved at rest because of nerve damage suffered during his military service.

Believing that at least one of the children was still in the house, the workers reentered their car to discuss their next step. VanBuskirk stood behind a "concrete barrier" outside the home's entrance and stared at them. Two observed VanBuskirk holding a baseball bat and swinging it down by his legs. VanBuskirk then darted to his minivan, entered it, and drove head-on toward the DHHS employees' vehicle at approximately 40 miles an hour. The driver quickly reversed to avoid being hit. VanBuskirk drove his minivan to the end of the driveway and parked lengthwise across it, effectively blocking the workers' only means of egress. VanBuskirk walked back to the DHHS employees' vehicle and again yelled at them to leave his property. VanBuskirk stormed across a field and into the woods, picking up a yellow axe handle along the way. VanBuskirk later described that he was very angry and walked to the back of his property to calm down. He also called a neighbor for advice.

The DHHS employees called 911 and two Michigan State Troopers arrived at the scene. They spoke to the DHHS employees and waited for VanBuskirk to reappear. The troopers eventually noticed VanBuskirk walking "aggressively" toward them across a field, shouting at the officers to leave his property. He had something in his hand, which the officers later discovered was a cell phone. The troopers repeatedly yelled for VanBuskirk to show them his hands, but VanBuskirk did not comply. VanBuskirk described that he could not raise his arms as ordered because of his injuries, but also asserted that he could not hear the troopers' orders. As he got closer, the officers ordered VanBuskirk to get on the ground. The troopers testified that VanBuskirk made no effort to comply; VanBuskirk again claimed he could not hear them. The officers tried to bring VanBuskirk to the ground, but VanBuskirk resisted. One trooper engaged his Taser, first on a light setting and then with a stronger current. The troopers then handcuffed VanBuskirk and transported him to the station. Throughout the fray, VanBuskirk complained that he had ordered the DHHS employees off his property, and the troopers advised VanBuskirk that a court order permitted their presence.

The prosecution charged VanBuskirk with one count of felonious assault, three counts of threatening a DHHS employee with physical harm, and two counts of assaulting/resisting/obstructing a police officer. Early on, the parties exchanged discovery. The

prosecutor apparently provided VanBuskirk's first attorney footage from the troopers' dashboard camera. VanBuskirk's second attorney noted on the police report that the footage had been preserved and asked both his predecessor and the prosecutor for a copy. Neither supplied it. Defense counsel asserted that the prosecutor told him the footage did not exist.

At trial, the prosecutor sought to present a portion of the dash-cam footage into evidence to impeach VanBuskirk's testimony about the events in question. Defense counsel objected and the court excluded the footage from trial. Only after the close of trial was the footage provided to defense counsel. After reviewing the recording, defense counsel opined that parts of the video actually bolstered his client's testimony and impeached the troopers' version of events. Defense counsel filed a motion for a new trial based on newly discovered evidence, which the trial court denied.

Also during discovery, defense counsel provided the prosecution with voluminous records from VanBuskirk's chiropractor. Counsel then inadvertently omitted the chiropractor from his witness list. One week before trial, defense counsel filed a motion to amend the witness list to add the chiropractor as an expert. VanBuskirk had treated with the chiropractor three days before this incident and he could testify to VanBuskirk's mobility limitations. Defense counsel contended that this would support VanBuskirk's claim that he was not resisting the troopers' commands; he could not physically comply.

The trial court denied the motion. Because of COVID protocols, a jury had been selected three weeks before trial. The court noted that the prosecutor was unable to inquire if any potential jury members knew the proposed witness and could conduct no voir dire regarding their ability to review expert testimony. Therefore, the court determined that it would be unfairly prejudicial to the prosecution to permit the amendment. Defense counsel requested an adjournment to permit the prosecutor to prepare to question the chiropractor, but the court rejected that request as well.

Ultimately, the jury convicted VanBuskirk of all charges. And as noted, the court later denied VanBuskirk's motion for a new trial. VanBuskirk now appeals.

## II. MOTION TO ADD EXPERT WITNESS

VanBuskirk challenges the trial court's denial of his motions to add his chiropractor as an expert witness and to adjourn the trial to allow the prosecutor time to prepare to question that witness. He further contends that the absence of this evidence prevented him from presenting a defense. We review for an abuse of discretion a court's decision on a motion to belatedly endorse a witness and on a motion to adjourn. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008); *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). We review de novo constitutional claims, such as the deprivation of the right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

Disclosure of witnesses in a criminal proceeding is governed by MCR 6.201, which provides, in relevant part:

> (A) Mandatory Disclosure. In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:

(1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview, the witness list may be amended without leave of the court no later than 28 days before trial;

* * *

(3) the curriculum vitae of an expert the party may call at trial and either a report by the expert of a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion[.]

Although the court rule requires all witnesses be disclosed no later than 28 days before trial, courts have discretion to permit late endorsement, and are encouraged to do so. This is because a criminal defendant has a constitutionally protected right to present a defense, "which includes the right to call witnesses." *Yost*, 278 Mich App at 379. Preclusion of a witness is an extreme sanction "and should be limited to only the most egregious cases." *Id*. It is improper to exclude a witness when the defendant has not engaged in abusive conduct in the litigation and the prosecution would not be prejudiced by the addition. *Id*. at 381. Adjourning a trial to give the other party time to prepare can alleviate any prejudice caused by the late endorsement.

In *People v Callon*, 256 Mich App 312, 326; 662 NW2d 501 (2003), the prosecution violated its duty under MCL 767.40a to present its witness list no later than 30 days before trial. The trial court permitted the prosecution to amend its trial witness list during opening statements to add the state police laboratory technician who tested the defendant's blood samples. *Id*. at 325. This Court affirmed the late endorsement, explaining that the notice requirement "was satisfied" because the prosecution had furnished the toxicology report to the defense during discovery and that report identified the technician. The technician's opinion "was discovered" through testimony at the preliminary examination as well. *Id*. at 327.

In this case, defense counsel had provided VanBuskirk's voluminous chiropractic records to the prosecution during discovery. The prosecution could not claim surprise. Moreover, defense counsel's failure to include the chiropractor on the witness list was clearly inadvertent. A brief supplementary voir dire could have been conducted to test the jurors' potential biases and an adjournment could have been granted to give the prosecution the opportunity to better prepare. There was no sound reason to deny VanBuskirk the right to present this witness. Accordingly, the court abused its discretion in denying the motion.

To warrant relief, a defendant must show more than that an error occurred. The defendant must also show "that it is more probable than not that the error was outcome determinative." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). VanBuskirk cannot make that showing.

The chiropractor may have been able to explain that VanBuskirk was physically unable to raise his arms as ordered by the troopers. The chiropractor may also have supported VanBuskirk's testimony that the manner in which he held his shoulders and arms was not meant to be menacing, but was necessitated by his injuries. However, these explanations would not invalidate the

-4-

substantial evidence supporting VanBuskirk's convictions. VanBuskirk was not convicted of assault or threatening DHHS employees because of his stance. His convictions were based on his threatening words and his use of a baseball bat and a minivan to frighten the workers. Moreover, VanBuskirk testified that he could not hear the troopers order him to raise his arms. Evidence that VanBuskirk could not physically raise his arms does not add support for that testimony. Even if the evidence was presented, VanBuskirk's inability to raise his arms would not counter evidence that he wrestled with the troopers to avoid being handcuffed, requiring a trooper to deploy his taser. Given the substantial evidence supporting VanBuskirk's convictions, he is not entitled to relief.

## III. MOTION FOR NEW TRIAL

VanBuskirk also challenges the trial court's denial of his motion for a new trial based on the late-provided dash-cam footage. We review for an abuse of discretion a trial court's decision on a motion for new trial. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018).

Pursuant to MCR 6.431(B), "the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." To support a motion for a new trial on the basis of newly discovered evidence, the defendant must establish: "(1) 'the evidence itself, not merely its materiality, was newly discovered'; (2) 'the newly discovered evidence was not cumulative'; (3) 'the party could not, using reasonable diligence, have discovered and produced the evidence at trial'; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), quoting *People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996). In determining whether the new evidence would make a different result probable on retrial, the court must consider the newly discovered evidence in light of the evidence that was previously introduced at trial. *People v Grissom*, 492 Mich 296, 321; 821 NW2d 50 (2012).

At trial, VanBuskirk testified in his own defense. He testified that he was so upset that his ears were ringing and he had tunnel vision and he therefore could not hear the troopers until they were very close. During cross-examination, VanBuskirk asserted that he told the officers this on the car ride to the station. At that point, the prosecutor sought to introduce the recording from the patrol car's dashboard camera. Defense counsel objected because the recording had not been provided during discovery and counsel had no opportunity to review it. The court excluded the video from the evidence at that point. Only after the trial concluded was defense counsel given an opportunity to review the recording. The interaction between VanBuskirk and the troopers occurred completely off camera, but the sound was recorded. Defense counsel opined that the recording actually supported VanBuskirk's version of events and sought a new trial.

Hindsight is 20/20 and defense counsel should have asked for a recess at trial to review the dash-cam footage. And the prosecution clearly erred in failing to provide the footage when requested by VanBuskirk's second trial attorney. However, we have reviewed the footage and contrary to the defense's claim, its presentation would not have made a different result probable on retrial.

The recording supports that VanBuskirk had difficulty hearing the troopers. When the troopers ordered VanBuskirk to raise his arms, VanBuskirk responded, "What?" A commotion

can be heard, including VanBuskirk screaming in pain, after the troopers ordered VanBuskirk to the ground. The dash-cam footage therefore does not contradict the most important facts underlying VanBuskirk's two resisting and obstructing convictions—that the troopers were forced to wrestle VanBuskirk to the ground and to employ their tasers to subdue him. Even if VanBuskirk explained his failure to comply in the patrol vehicle on the way to the station, that belated information could not change the fact that VanBuskirk physically resisted being taken into custody. And the footage had no bearing on the felonious assault and threatening DHHS employee charges. Accordingly, the trial court did not abuse its discretion in denying VanBuskirk's motion for a new trial.

## IV. HEARSAY

Finally, VanBuskirk contends that the trial court improperly excluded testimony from his neighbor, Matthew Seidelman, regarding statements that VanBuskirk made to the troopers. VanBuskirk was on the phone with Seidelman as he began to cross the field to approach the troopers. VanBuskirk presented Seidelman as a defense witness. Seidelman testified about his conversation with VanBuskirk and testified generally about what he heard over the phone. However, the court sustained the prosecutor's hearsay objections when Seidelman attempted to more specifically testify about what VanBuskirk said to the troopers.

Specifically, the following colloquy occurred at trial:

> *[Defense Counsel]*. What was his demeanor like when you were on the phone with him?
>
> *[Seidelman]*. Frustrated. I mean, sad more than anything. . . . He didn't understand why CPS was at his house when he had already told them that the children weren't there and where the children were. And I told him just to go talk to the police, so at that point he started walking towards them. I heard the officers ask him what he was doing back there. He said I own 16 acres. I'm back here walking around trying to calm down. Trying to get my head straight. Then they told him --

The court sustained the prosecutor's objection at that point. The questioning continued:

> *[Defense Counsel]*. What was he saying to the officers?
>
> *[Seidelman]*. He hadn't said anything yet.

The prosecutor again objected on hearsay grounds. Defense counsel countered, "It's a statement of the defendant, Your Honor." The court replied, "Right, which is still hearsay," and sustained the objection. The questioning continued:

> *[Defense Counsel]*. Did you hear shouting?
>
> *[Seidelman]*. From the officers, yes.

> *[Defense Counsel].*  Without telling me what he specifically said, did you hear Mr. Van Buskirk speaking with them, interacting?

> *[Seidelman].*  Well they told him not -- just when they told him to put his hands in the air.  He said, "I can't."

The prosecutor again objected.  The court sustained the objection and struck Seidelman's answer from the record.

VanBuskirk now contends that these were prior consistent statements of a defendant and therefore were not inadmissible hearsay.  Hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c).  Hearsay is not admissible except as provided by the rules of evidence.  MRE 802.  Under MRE 801(d)(1)(B), a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ."

At trial, the troopers and VanBuskirk provided different versions of events.  The troopers testified that VanBuskirk stalked aggressively toward them across the field, ignored their orders to put his arms in the air, and fought them when they tried to bring him to the ground.  VanBuskirk admitted that he was angry as he crossed the field.  He claimed that his ears were ringing and his emotional state led to "tunnel vision."  This was a credibility contest, but there was no "express or implied charge against the defendant of recent fabrication or improper influence or motive."  Accordingly, Seidelman's testimony about the content of VanBuskirk's statements was not admissible as a prior consistent statement.[1]

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[1] We note, too, that the dash-cam recording does not support the testimony Seidelman attempted to give.  When the troopers ordered VanBuskirk to raise his arms in the air, the listener can hear VanBuskirk yell, "What?"  VanBuskirk cannot be heard telling the troopers he cannot raise his arms as claimed by Seidelman.  Although the troopers can be heard asking what VanBuskirk was doing in the woods, VanBuskirk's answer cannot be heard.