*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. BROWN, Minor.

UNPUBLISHED
August 24, 2023

No. 364598
Eaton Circuit Court
Family Division
LC No. 22-020688-NA

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals by right the termination of her parental rights to her child, BB, under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*). We affirm because there are no errors warranting reversal.

## I. BASIC FACTS

At the age of approximately three months, BB suffered several severe injuries while in the care of his parents.[1] Some of those injuries were readily apparent and visibly serious almost a week before his parents brought BB to the hospital. Following medical examinations, doctors determined that BB had suffered a skull fracture, broken bones in both of his arms, bleeding in his eye, and multiple planes of bruising on his head and face. The arm fractures could not have been self-inflicted, and although the skull fracture could potentially have resulted from a fall from a bed, such a fall would not explain the multiple planes of bruising. Overall, the injuries were all indicative of abuse. Neither respondent nor BB's father ever provided a medically plausible innocent explanation for BB's injuries. Following a termination hearing, the trial court terminated the parental rights of respondent and BB's father because BB had obviously been severely abused by at least one of them while in their joint care, there was a failure to protect, and the lack of information about how the abuse happened precluded any ability to prevent a recurrence of further abuse in the future.

---

[1] The trial court terminated the parental rights of BB's father; however, he is not participating in this appeal.

## II. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by finding statutory grounds to terminate her parental rights because there was no conclusive evidence that she was the person who abused BB. "A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). This Court reviews for clear error the trial court's determination that at least one statutory ground for termination was proved by clear and convincing evidence. *Id.* "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). Under the clear-error standard, a trial court's decision must be "more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

### B. ANALYSIS

Respondent contends that termination was improper because the evidence does not establish by clear and convincing evidence that she, personally, perpetrated the abuse. However, under the circumstances, that fact is not dispositive.

In *In re VanDalen*, 293 Mich App 120, 123-131; 809 NW2d 412 (2011), the mother had repeatedly emphasized that she did not trust the father and separated from him, initially received one of the children back into her care, and then reunited with the father, following which their children sustained an almost unprecedented number of repeated injuries that were noticed by other caregivers yet disregarded by the parents. In that case, it appeared that neither parent could possibly have been unaware of the children's injuries, which were not only shocking to a highly experienced doctor, but also readily apparent and alarming to other lay caregivers. *Id.* at 140. In light of their shared responsibility for the children, their shared lack of alarm at the children's extensive and obvious injuries, the fact that the injuries were clearly the product of repeated and brutal abuse, and the parents' provision of "nothing more than far-fetched conjecture or silence," this Court held that "[i]t does not matter in the least which of them committed these heinous acts." *Id.* at 139-140. Even though MCL 712A.19b(3)(b)(*ii*) was not at issue in *VanDalen*, this Court specifically relied on the fact that "at least one of them perpetrated this shocking abuse and one of them failed to adequately safeguard the children from the abuse." *Id.* at 140.

Subsequently, in *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011), this Court held:

> The most significant and interesting argument respondents raise is that it is impossible to determine which of them committed this heinous abuse of the minor child. That would be an extremely relevant, and possibly dispositive, concern in a criminal proceeding against either or both of them, but it is irrelevant in a termination proceeding. When there is severe injury to an infant, it does not matter whether respondents committed the abuse at all, because under these circumstances there was clear and convincing evidence that they did not provide proper care.

-2-

Thus, "termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *Ellis*, 294 Mich App at 35-36.

In this case, it is apparent from the trial court's bench ruling that it found both parents minimally failed to protect BB from the abuse. That finding was supported by the record, which showed that respondent had a high potential for child abuse, even if that potential was not predictive. The evidence also established that respondent had a disconnect with BB, ranging from her use of strange ways of talking to or about BB to a persistent inability to understand BB. Additionally, respondent lacked emotional control and could lash out if angry or upset. And her EMT training suggests that she should have had more understanding of BB's injuries than would a layperson. Respondent obviously knew something was wrong with BB, based on her photographic documentation of BB's injuries and Internet searches related to BB's injuries. A detective reviewed the photos respondent took several days before BB was taken to the hospital, and he described the injuries depicted as some of the worst he had seen in his career. An expert doctor opined that BB would have been in pain and displayed distress when each of the injuries occurred, which is consistent with the testimony in *Ellis* that the child might not have "been crying constantly" but nevertheless would have been visibly distressed. *Id*. at 35.

As a whole, the evidence supports a finding that respondent could very well have inflicted at least some of BB's injuries out of frustration and incomprehension about BB's needs. Nevertheless, under the circumstances in this case there was clear and convincing evidence that she did not provide proper care. See *id*. at 33. Even if respondent did not inflict BB's injuries, she knew that BB's initial bruising—several days before taking him to the hospital—was unnatural and concerning. Further, although respondent and BB's father did finally take BB to the hospital shortly thereafter, their story about BB appearing perfectly fine before going into a store and coming back out with severe bruising is certainly far-fetched and therefore highly suspicious. Finally, although it is not possible to know with certainty when all of BB's injuries were inflicted, it is reasonably likely that some of them might not have occurred if respondent had taken BB to the hospital at an earlier time. We therefore cannot conclude that the trial court's findings were "more than just maybe or probably wrong." *Williams*, 286 Mich App at 271.

### III. RIGHT TO BE FREE FROM SELF-INCRIMINATION

Respondent next suggests that the trial court violated her right to be free from self-incrimination.[2] Under the Fifth Amendment to the United States Constitution, a person may not

---

[2] Petitioner argues that this Court lacks jurisdiction over this issue. This Court is required to question its own jurisdiction. *In re Farris/White*, 340 Mich App 619, 624; 987 NW2d 912 (2022). Petitioner argues that respondent is really appealing the trial court's initial dispositional order and that respondent failed to do so within this Court's jurisdictional deadlines. However, we disagree with petitioner's former contention, and, even if we were to accept it, petitioner mistakenly contends that respondent filed her claim of appeal three months later than it was actually filed. We therefore reject petitioner's jurisdictional challenge.

be compelled to provide self-incriminating testimony. *In re Blakeman minors*, 326 Mich App 318, 332; 926 NW2d 326 (2018). A parent may not be forced to waive the right against self-incrimination as a precondition to retaining or regaining the parent's care and custody of a child. *Id*. at 339. In *Blakeman*, the parent was babysitting an unrelated child, who suffered an unexplained injury while in the parent's care, following which, the parent's own children were removed. *Id*. at 321-322. The parent maintained his innocence, and eventually the trial court opined that it knew the parent had harmed the unrelated child and ordered that the parent's own children would remain out of his care until he admitted to having abused the unrelated child. *Id*. at 322-330. This Court recognized that the trial court had not actually directed the parent to admit guilt, but it had nevertheless impermissibly given the parent a "Hobson's choice" of either admitting guilt and subjecting himself to criminal responsibility or maintaining his innocence and losing his parental rights. *Id*. at 333-335. However, this Court also recognized that nonincriminating testimony was not protected by the Fifth Amendment. *Id*. at 335.

Here, the trial court repeatedly emphasized that it was practically impossible to fashion appropriate services[3] without knowing what needed to be remedied. This is not an inappropriate concern. In the context of reasonable efforts, it is established that petitioner "cannot accommodate a disability of which it is unaware." *In re Hicks/Brown*, 500 Mich 79, 87; 893 NW2d 637 (2017). Further, the court did not condition anything on an admission of guilt; rather, it recognized the practical reality that it was impossible to determine with any degree of certainty what services could rectify a condition when that condition was, itself, unknown. We also note that respondent's theory of the case was that she did not know that BB was being abused and that the abuse must have been at the hands of BB's father. As noted, being compelled to provide nonincriminating testimony does not offend the Fifth Amendment. *Blakeman*, 326 Mich App at 335.

Moreover, the Fifth Amendment prohibits penalizing a party for refusing to give self-incriminating testimony, but it does not prohibit all adverse consequences from failing to testify. *In re Stricklin*, 148 Mich App 659, 665-666; 384 NW2d 833 (1986). Consideration of the other evidence presented could be nothing "more than the 'penalty' that any party suffers when he decides not to testify in his own defense." *Id*. at 665. In the criminal context, it is not improper for a prosecutor to argue that certain inculpatory evidence is undisputed. *People v Callon*, 256 Mich App 312, 331; 662 NW2d 501 (2003). And the trial court is not obligated to believe a respondent's theory. See *In re BWJ*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363607); slip op at 2.

Based on the record, we conclude that the trial court never demanded a confession of guilt and did not condition respondent's parental rights, or even provision of services, on a confession of guilt. Rather, the court appropriately recognized that it lacked sufficient information to craft more appropriate services, and it appropriately drew what conclusions it could from the limited

---

[3] Petitioner and the trial court appeared to be under the misapprehension that respondents were not entitled to services or other reasonable efforts at reunification solely because petitioner sought termination in its petition. That view is incorrect. See *In re Simonetta*, 340 Mich App 700, 707-708; 987 NW2d 919 (2022). Because the trial court nevertheless actually ordered services to be provided, that error was, under the circumstances, harmless.

information it had available.  The court, therefore, did not violate respondent's Fifth Amendment rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle