# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 16, 2015

Plaintiff-Appellee,

v

No. 318675
Wayne Circuit Court
LC No. 13-004789-FC

JOHN BROWN,

Defendant-Appellant.

Before: SAAD, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals his jury-trial convictions for armed robbery, MCL 750.529, and assault to do great bodily harm less than murder, MCL 750.84. For the reasons stated below, we affirm defendant's convictions, but remand for resentencing or factual findings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Defendant brutally assaulted and attempted to rob a 72 year-old businessman. The victim owns and operates a Dairy Queen in Detroit, and as he closed the store late at night, defendant attacked and beat him. Defendant tackled the victim, began beating him with his fists and a metal object,[1] and demanded money. However, the victim was armed, and shot defendant twice. Wounded, defendant stopped beating the victim and fled on foot.

The victim called the police immediately after the incident. Approximately 10 minutes later, officers received information of a shooting approximately one block north of the victim's Dairy Queen. When the police responded to this second call, they found defendant, who had bullet wounds in his leg and chest, lying on the front porch of a house. Defendant claimed he had been shot while taking out his garbage—despite the fact that it was very late at night and not

---

[1] The victim testified that the metal object was a semi-automatic pistol, but the police never recovered such a weapon. However, officers found a section of metal pipe near the Dairy Queen.

-1-

the scheduled day for garbage collection. The police found no evidence of a shooting near the home, nor did they find any evidence that defendant was actually taking out his garbage.

Accordingly, the police suspected defendant committed the assault and attempted robbery at the Dairy Queen. Officers took him into custody at the hospital, where he remained in critical condition. Because of defendant's hospital stay, the police presented the victim with a photographic lineup, and the victim confidently identified defendant as his assailant.

Thereafter, the prosecution charged defendant with: (1) armed robbery, MCL 750.529; (2) assault to do great bodily harm less than murder, MCL 750.84; (3) felon in possession of a firearm, MCL 750.224f; and (4) two counts of felony-firearm, MCL 750.227b. Defendant elected to have a jury trial, and the Wayne Circuit Court empanelled a jury to hear his case. After it heard testimony from the victim and numerous police officers, the jury convicted defendant of armed robbery and assault to do great bodily harm, but acquitted defendant of the firearm-related charges.

On appeal, defendant attributes error to three actors: his trial attorney, the trial court, and the prosecutor. Defendant says trial counsel gave him ineffective assistance when counsel: (1) did not challenge the accuracy of his presentence investigation report (PSIR); and (2) did not move to suppress the admission of the victim's identification testimony, which was produced from a photographic lineup. Defendant also asserts that the trial court erred when it used numerous offense variables to assess his appropriate sentencing score under the sentencing guidelines. And finally, defendant claims that the prosecutor committed misconduct when he: (1) questioned a police officer at trial; and (2) made his closing argument.

## II. STANDARD OF REVIEW

When we review a trial court's decision under the sentencing guidelines, its factual determinations "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because defendant failed to preserve his claim for ineffective assistance of counsel by moving for an evidentiary hearing or new trial in the trial court, our review is limited to mistakes apparent on the appellate record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Likewise, most of defendant's claims of prosecutorial misconduct are unpreserved, and are therefore reviewed for "plain error that affected his substantial rights." *People v Thomas*,

260 Mich App 450, 453-454; 678 NW2d 631 (2004).[2]  Reversal is warranted "only if we determine that, although defendant was actually innocent, the plain error caused him to be convicted, or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, regardless of his innocence."  *Id*. at 454 (quotation marks and citation omitted). "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect."  *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

### III.  ANALYSIS

### A.  ASSISTANCE OF COUNSEL

To be entitled to relief, a defendant asserting a claim of ineffective assistance must demonstrate "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."  *Trakhtenberg*, 493 Mich at 51.  Defendant also bears the burden of establishing the factual predicate for his claim.  *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  Counsel cannot be held ineffective for failure to make a meritless argument or futile objection.  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Here, defendant makes two arguments that his lawyer provided him ineffective assistance, neither of which is convincing or relevant.  Defendant's PSIR stated that he committed a robbery in 1991 in Indiana.  At the sentencing hearing, defendant personally contested the validity of that conviction, and claimed that he was instead charged with a home invasion in 1990.  However, the trial court did not find defendant, or his recollections, credible, and found the PSIR to be accurate.[3]  Moreover, defendant fails to explain how this "error" affected his sentencing, nor does he offer any evidence, beyond his mere assertions, that PSIR actually *is* inaccurate.  *Hoag*, 460 Mich at 6.  Accordingly, defendant cannot fault his trial attorney for not challenging the accuracy of the PSIR when there is nothing in the record that shows the PSIR is inaccurate.  *Trakhtenberg*, 493 Mich at 51.[4]

Defendant also avers that trial counsel should have moved to suppress the victim's identification testimony, because the police had defendant in custody, yet used a photographic

---

[2] Defendant did object to one specific instance of alleged prosecutorial misconduct during the prosecutor's closing argument, and to the extent that we review this specific allegation of misconduct, we do so "de novo to determine if the defendant was denied a fair and impartial trial."  *Thomas*, 260 Mich App at 453.

[3] The trial court's determination of defendant's credibility is entitled to deference.  *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended on other grounds 481 Mich 1201 (2008).

[4] Because the PSIR is accurate, and defendant provides no evidence to the contrary, we need not address defendant's arguments regarding the trial court's scoring of his sentence on the basis of the prior offenses he committed that are mentioned in the PSIR.

instead of a corporeal lineup. But the police are entitled to use a photographic lineup when "[i]t is not possible to arrange a proper lineup." *People v Anderson*, 389 Mich 155, 186 n 23; 205 NW2d 461 (1973), overruled in part on other grounds *People v Hickman*, 470 Mich 602 (2004). Here, it was not possible to arrange a corporeal lineup because defendant was in the hospital—receiving treatment for wounds he sustained because of his assault and failed robbery of the victim. Accordingly, the photographic lineup was permissible, and counsel cannot be faulted for failure to raise an objection to admission of the victim's identification evidence. *Ericksen*, 288 Mich App at 201.

## B. SENTENCING

Defendant raises several challenges to the scoring of his sentence under offense variables (OVs) 1, 2, 3, 7, 10, and 13. We address each in turn.

### 1. OVS 1 AND 2

OV 1 considers aggravated use of a weapon. MCL 777.31. A score of 10 points is warranted if "[t]he victim was touched by any other type of weapon." MCL 777.31(1)(d). The trial court appropriately assigned 10 points to OV 1 because defendant struck the victim with a metal pipe during the attack. OV2 looks to the "lethal potential of the weapon possessed or used." A score of 1 point is appropriate if the defendant "possessed or used any other potentially lethal weapon." MCL 777.32(1)(e). Because defendant struck the victim with a metal pipe, the trial court accurately scored this variable at 1 point.[5]

### 2. OV 3

OV 3 considers the extent of injury to a victim. MCL 777.33. A score of 10 points is appropriate if a victim suffered "[b]odily injury requiring medical treatment . . . ." MCL 777.33(1)(d). The phrase " 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

Here, the trial court assigned 10 points under OV 3, a score that was supported by the victim's testimony that he suffered numerous abrasions and other injuries that required medical attention. The victim also testified that he attempted to visit a doctor, but left because the doctor's office was too busy, and treated himself.[6] Despite defendant's statements to the contrary, it is irrelevant for purposes of OV 3 that the victim never obtained professional medical treatment. MCL 777.33(3). Accordingly, the trial court appropriately assigned 10 points to OV 3.

### 3. OV 7

---

[5] Defendant does not argue that the pipe was not potentially lethal.

[6] The victim is a former military medic.

A score of 50 points is appropriate under OV 7 if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). To determine if a defendant's conduct was intended to substantially increase the fear and anxiety of a victim, a court must consider whether the defendant's conduct: (1) went beyond what is minimally required to commit the crime; and (2) whether the conduct was intended to considerably increase a victim's fear or anxiety. *Hardy*, 494 Mich at 443-444.

Here, defendant committed an armed robbery. To complete this crime, defendant "could have simply put the victim[] in fear by orally representing that he had a weapon." *Id*. at 446. Instead, defendant ran into the victim, threw him to the ground, and beat him with a metal pipe. This conduct went far beyond what was necessary to complete the crime. Defendant did so while demanding money from the victim and threatening to kill him. From this evidence, the trial court properly inferred that defendant intended to substantially increase the victim's fear or anxiety. *Id*. at 446-447. Accordingly, the trial court correctly assigned 50 points under OV 7, and defendant's argument to the contrary is without merit.

### 4. OV 10

OV 10 considers a defendant's exploitation of a vulnerable victim. MCL 777.40. The trial court must assign 10 points to this variable if the defendant "exploited a victim's . . . youth or agedness . . . ." MCL 777.40(1)(b). " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). Here, the victim was 72 years old at the time of the attack, and was walking alone in a well-lit parking lot. Defendant could plainly see that the victim was elderly and alone, and yet chose to attack and rob him. Therefore, the trial court properly assessed 10 points under OV 10.

### 5. OV 13

OV 13 considers a defendant's pattern of criminal behavior. MCL 777.43. "For determining the appropriate points under [OV 13], all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Thus, OV 13 considers not only the instant convictions, but all crimes "committed during a five-year period that encompasses the sentencing offense . . . ." *People v Francisco*, 474 Mich 82, 86; 711 NW2d 44 (2006). The trial court's factual findings at sentencing need only be supported by a preponderance of the evidence, not the significantly higher standard required to support a conviction. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

Here, in the five years preceding defendant's attack on the victim, defendant's PSIR lists the following crimes: the two convictions that are the subject of this appeal, the related firearms charges of which he was acquitted, and possession of less than 25 grams of a controlled substance on July 7, 2008. The trial court properly considered these crimes when it scored OV 13, and defendant's claims otherwise are contrary to Michigan law.

However, the trial court erred when it scored 25 points under OV 13, because the court's factual findings do not support the conclusion that defendant's convictions are "part of a pattern

of felonious criminal activity involving 3 or more crimes against a person" within 5 years of the charged offenses. While the trial court could have considered the related firearms charges of which defendant was acquitted in its assessment OV 13, it did not find that defendant used a gun when he committed the charged crimes.[7]

As such, in addition to his convictions for robbery and assault to do great bodily harm, the only prior felony that could serve as a basis for defendant's 25 point score under OV 13 is his 2008 drug possession. But this felony is not a crime against a person, and thus cannot support the 25 point score under OV 13. Because the trial court calculated defendant's total OV score at 106 points, which placed defendant in OV Level VI under MCL 777.62, a potential reduction in defendant's OV score to 81 points would place him in OV Level V, and would reduce his sentence range under the guidelines. MCL 777.62. [8]

Accordingly, the trial court must either (1) resentence defendant under OV 13, or (2) find on the record that a preponderance of the evidence shows defendant committed the assault and robbery with a firearm.[9] *Francisco*, 474 Mich at 91-92.

## C. PROSECUTOR'S CONDUCT

Again, defendant unavailingly asserts that the prosecutor committed misconduct when he: (1) questioned a police officer; and (2) made his closing argument. Specifically, defendant argues that the prosecutor committed misconduct when he presented a police officer as a witness, and asked him about the victim's demeanor when the officer gave the victim the photographic lineup. Though defendant implicitly suggests that the prosecutor's questions impermissibly vouched for the victim's credibility, his argument "is essentially an evidentiary issue framed as prosecutorial misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). "A

---

[7] Specifically, the trial court stated at the sentencing hearing:

> There was testimony with regard to a lead pipe or small pipe that was found on the scene. One of the officers actually said, "Well, if you hold it in your hand it could appear to look like a gun." I believe that based on that evidence the jury came to a conclusion that [defendant] was holding that pipe rather than a gun and found him not guilty of the gun offenses, but found him guilty of Armed Robbery, and in order to do so they had to find he had a weapon of some sort. Based on the evidence that was there, I would think I draw the conclusion the jury concluded he had a pipe at that time . . ."

[8] The prosecution argues that the trial court could have based its decision to score OV 13 at 25 points on the basis of defendant's possible commission of felonious assault. But the trial court made no findings on this matter, nor did the prosecution charge defendant with felonious assault.

[9] Needless to say, if the trial court finds that defendant committed the assault with a firearm, its score of 25 points under OV 13 would be appropriate, as defendant would have then committed at least three crimes against a person in the past 5 years—robbery, assault with intent to do great bodily harm, and felony-firearm. MCL 777.43(1)(c).

prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id*. Defendant does not argue that the officer's testimony was inadmissible or that the prosecutor's attempt to admit it was not made in good faith. And it can hardly be said that the prosecutor's attempt to admit officer's testimony was *not* made in good faith when the testimony was admitted by the trial court. *Id*.[10]

Nor did the prosecutor commit misconduct in his closing argument. Despite defendant's claims to the contrary, the prosecutor was entitled to comment on the victim's credibility during closing argument. The prosecutor did so by noting that the victim's identification of defendant was credible, because the victim behaved deliberately and cautiously when he identified defendant in the police photo array. *Thomas*, 260 Mich App at 455. The prosecutor did not argue that he had special knowledge of the victim's credibility; instead he merely stated that the victim's identification was credible because of the manner in which it was made.[11]

Defendant's suggestion that the prosecutor impermissibly described his role to the jury as a "minister of justice" is meritless. During his closing argument, defense counsel argued that the police and the prosecutor assumed that defendant was the perpetrator before fully investigating the matter. In rebuttal, the prosecutor stated:

> The job of the police and the prosecutor are often misunderstood. And they're often confused. . . . The police investigate crime. They are the ones who go out and try to determine who did it. When they do their job, or think they've done their job, then they come to me. Because the court rules in the state of Michigan, and in every state, provide that the prosecution is a "minister of justice[."] And we have special responsibilities that go above and beyond those of your average lawyer. And I take them seriously. My job is to review things and present a case to a jury. But I don't represent the victim. I don't represent Mr. Rivard individually. He is a witness. I represent the people of the state of Michigan, everybody. That's who I represent. That's my job. I don't come to conclusions and take facts to make them happen. That's not what my job is. My job is to present the facts that I have to you and suggest that those facts add up to one reasonable and logical conclusion.

---

[10] Moreover, our Court cannot find error warranting reversal as to this issue, because defendant did not seek a curative instruction, which could have alleviated any potential prejudicial effect. *Callon*, 256 Mich App at 329-330. Had defendant done so, the trial court could have instructed the jury that it alone was to decide matters of credibility.

[11] Defendant also contests the prosecutor's argument to the jury that defendant likely committed the Dairy Queen assault, because defendant's assertions regarding his injuries—that he was shot while taking out his garbage—were belied by the factual record. Specifically, defendant asserts that this argument was not based on facts in evidence. This assertion is flatly wrong—the prosecutor's argument *was* based on facts in evidence, namely, the testimony of a police officer who stated that no one reported a shooting in the area where defendant was found.

Obviously, the prosecutor—particularly in light of the argument made by defense counsel—did not at all suggest that he would not prosecute a meritless case. Rather, he described his role, which was to present the evidence to the jury and allow it to make a determination of defendant's guilt.

We therefore affirm defendant's convictions, and reject defendant's meritless arguments regarding ineffective assistance of counsel and prosecutorial misconduct. We remand for resentencing for the sole purpose of rescoring OV 13, or a finding by the trial court that defendant committed the two firearm related charges of which the jury acquitted him at trial. On remand, the trial court may not consider any of defendant's other sentencing-related arguments, as they are without merit.

Remanded for resentencing or factual findings consistent with this opinion. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro