# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCUS MITCHELL RUTAN,

Defendant-Appellant.

UNPUBLISHED
March 10, 2016

No. 325180
Jackson Circuit Court
LC No. 14-004232-FC

Before: SERVITTO, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant, Marcus Mitchell Rutan, was convicted by a jury of two counts of assault with intent to commit great bodily harm less than murder, MCL 750.84(1)(a), one count of assault by strangulation, MCL 750.84(1)(b), two counts of assault with a dangerous weapon, MCL 750.82(1), one count of resisting and obstructing law enforcement causing injury, MCL 750.81d(2), one count of resisting and obstructing law enforcement, MCL 750.81d(1), and two counts of second-offense domestic violence, MCL 750.81(3). He was found not guilty of one count of assault with intent to murder, MCL 750.83. The trial court sentenced defendant to concurrent sentences of 57 to 120 months for the assault with intent and assault by strangulation convictions, 32 to 48 months for the assault with a dangerous weapon convictions, 16 to 24 months for the resisting and obstructing conviction, and 12 months for the domestic violence convictions as well as a consecutive sentence of 32 to 48 months for the resisting and obstructing causing injury conviction to be served subsequent to the other sentences. Defendant appeals as of right his November 19, 2014 amended judgment of sentence. We affirm in part and remand for further proceedings.

## I. BACKGROUND

Defendant's convictions arise out of his assaults against his then-girlfriend, Sharon Payne, and her mother, Nedra Bunker, on the morning of March 12, 2014. Defendant moved in with Payne and Bunker in November 2013 and continued residing there until the day of this incident. At approximately 7:00 a.m. on March 12th, Payne overheard defendant and Bunker discussing the snowy road conditions after defendant returned home from work. Approximately fifteen minutes later, defendant told Payne that "he was going to go check the fluids in the car." Nearly three hours later, after defendant still had not returned to the house, Payne decided to check on him, and she found him in the garage with an opened can of beer and fifth of whiskey

-1-

"that was almost all the way gone." According to Payne, defendant "was slurring his words and . . . couldn't walk right." At this point, Payne told defendant "to go inside and sleep it off," and defendant replied that Payne should "shut the fuck up." Payne also noticed a new dent in her vehicle, the vehicle that defendant used to drive to work, and questioned him about it. Defendant responded that she need not worry about the dent and asked her to bring him a plunger. After doing so, Payne inquired further as to the cause of the dent. This time, defendant grabbed her by the neck and choked her for what she described as "about two or three minutes."

Hearing the altercation, Bunker entered the garage and told defendant to take his hands off Payne. Once Payne was able to free herself from defendant's grip by "grabb[ing] him by his testicles," Bunker told her to retrieve a baseball bat from the house. Payne did so, but, after returning to the garage, defendant was able to take the bat from Payne and strike her in the head with it. After Payne fell to the floor, defendant struck her again in the head at least one more time and dropped the bat. Fearing that defendant would also attack Bunker, Payne retrieved the bat and struck defendant with it. After briefly searching for her glasses, Payne realized that defendant and Bunker were no longer in the garage. She hurried back to the house and found Bunker "pinned" on the floor by defendant. While pinning her to the floor with one hand, Payne observed, defendant used the bat to strike Bunker twice in the head with the other. After the second hit, according to Payne, Bunker was bleeding and "out cold." At some point during the altercation, Payne recalled, defendant threatened "that he was going to kill [her] and [her] fucking mom."

Law enforcement arrived to the scene shortly thereafter and arrested defendant while he was writing an unsolicited statement. The officers agreed to handcuff defendant with his hands in front as to allow him to continue writing his statement because defendant "was not causing any problems . . . at that time." Moments later, however, defendant "became more vocal, wanting to know what was going on, why no one was responding to his questions, that type of thing." He "just kept escalating and escalating" until the police officers determined he needed to be removed from the home. As the officers attempted to walk defendant out of the residence, defendant "began resisting [their] efforts," failed to comply with instructions, "was cussing and swearing," and pushed and pulled away from them. He told the officers "that he wasn't leaving" and began "fighting and trying to pull away from" the officers while they attempted to escort him from the residence. As two officers attempted to escort defendant out of the residence and down the stairs, defendant's "aggression and pushing" eventually caused all three of them to fall down the remainder of the stairs and into a snowbank. One of the officer's hands ended up "caught with the handcuffs chain" and, despite the officers' commands for defendant to release the officer's hand, defendant continued preventing the officer from freeing his hand. After being tasered, defendant eventually complied and was placed in a patrol car.

Defendant generally denied having any memory of the incident to officers shortly after or in the days following the incident. At trial, however, he explained that his memory returned "[o]nce [his] headache went away." Defendant admitted drinking "half a bottle" of whiskey as well as a portion of a can of beer. He also admitted that he argued with and "slapped" Payne in the garage. According to defendant, however, after Bunker told him and Payne to stop, "everything went black and next thing I remember is waking up on the floor." He denied ever possessing a bat or striking either woman. He recalled being escorted out of the residence but denied being loud or belligerent and cited his head injuries and intoxication as reasoning for his

lack of memory. He stated that he "vaguely" remembered pushing the officers but only did so "to stay on [his] feet."

Defendant was convicted and sentenced as described above. This appeal followed. On appeal, defendant filed a motion to remand this matter relating to offense variable (OV) scoring, but we denied that motion because defendant failed to demonstrate that further factual development was necessary. *People v Rutan*, unpublished order of the Court of Appeals, entered May 21, 2015 (Docket No. 325180).

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that there was insufficient evidence to support his resisting and obstructing and resisting and obstructing causing injury convictions. We disagree.

Criminal defendants need not take any steps to preserve a challenge to the sufficiency of the evidence on appeal. *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). A challenge to the sufficiency of the evidence is reviewed de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). Evidence is sufficient to support a conviction when, viewing the evidence in a light most favorable to the prosecution, *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2011), a rational factfinder could conclude that the prosecution presented every element of the charged crimes beyond a reasonable doubt. *Cain*, 238 Mich App at 117. All conflicts in the evidence must be resolved in favor of the prosecution. *Id*. at 472. Circumstantial evidence and all reasonable inferences drawn therefrom may constitute sufficient proof of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

A person is guilty of resisting and obstructing law enforcement when he or she "assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties[.]" MCL 750.81d(1). A person is guilty of resisting and obstructing law enforcement causing injury when he or she does the same "causing a bodily injury requiring medical attention or medical care[.]" MCL 750.81d(2). The term "obstruct" refers to "the use or threatened use of physical interference of force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

In this case, the prosecution presented sufficient evidence to find defendant guilty of both offenses beyond a reasonable doubt. Multiple officers testified that defendant became aggressive while in the residence, cussed and swore at the officers, threatened to fight the officers, and pushed and pulled away while being escorted out of the residence. When asked to comply with their commands, the officers testified, defendant refused and continued acting in a similar fashion. Eventually, defendant's behaviors caused himself and two officers to fall down several stairs, and the officers eventually had to tase him to obtain his compliance. As a result of the fall, one of the officers sustained injuries to his hand that required medical attention and time off work. Thus, the evidence presented by the prosecution was sufficient to support the jury's guilty verdict on both counts.

Defendant's primary contention on appeal does not necessarily address whether the elements of each crime were satisfied. Instead, while expressly admitting in his brief that he was

"upset," "arguing," and "pushing back" during the incident, he nevertheless claims that, "[c]learly, he was not attempting to resist or obstruct the arrest." Specifically, without citing authority to support his position, defendant claims that because he "was attempting to aid" the victims, he was not resisting and obstructing law enforcement under MCL 750.81d. We reject this assertion. Stated simply, defendant is not immune from the prosecution of resisting and obstructing law enforcement simply because, according to his after-the-fact subjective intentions, he desired to assist the victims that he assaulted with a baseball bat only moments before. There is no authority to support this position, nor should there be.

Accordingly, we conclude that there was sufficient evidence to support defendant's resisting and obstructing and resisting and obstructing causing injury convictions.

## B. *BRADY* VIOLATION

Defendant next argues that he was deprived of his constitutional right to due process because law enforcement failed to test the baseball bat for fingerprints. We disagree.

This issue was not raised before or decided by the trial court. Thus, it is unpreserved for appellate review. *People v McCrady*, 244 Mich App 27, 29; 624 NW2d 761 (2000). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004); *Carines*, 460 Mich at 763-764. "[R]eversal is only appropriate when the plain error that affected substantial rights seriously affected the fairness, integrity, or public reputation of the proceedings or when the defendant shows actual innocence." *People v Pipes*, 475 Mich 267, 283; 715 NW2d 290 (2006) (citation and internal quotation marks omitted).

On appeal, defendant claims that law enforcement's failure to test the baseball bat constituted a violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt to punishment, irrespective of the good faith or bad faith of the prosecution." 373 US at 87. There are three components of a *Brady* violation: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). The defendant bears the burden of proving all three. *People v Schumacher*, 276 Mich App 165, 177; 740 NW2d 534 (2007).

In this case, defendant's *Brady* challenge fails for a variety of reasons. First, it is abandoned. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Defendant merely sets forth the elements of a *Brady* violation in his brief and concludes that a *Brady* violation occurred. This is insufficient to warrant our review. *Id*. Additionally, a decision regarding whether to test an object for fingerprints is a legitimate police investigation determination, and defendant makes no argument to the contrary. *Pipes*, 475 Mich at 283. Furthermore, police are not required to seek and find exculpatory evidence. *People v Stephens*, 58 Mich App 701, 706; 228 NW2d 527 (1975). Finally, there is nothing in the record to suggest that testing the baseball bat for fingerprints would have yielded successful, much less exculpatory, results. In fact, one police officer testified that because "the handle of the bat is

wrapped in tape" and several people had touched it, "[i]t would be next to impossible to get any prints off of that at all." Merely hypothesizing that evidence might have been helpful, as opposed to explaining how it is exculpatory or material, is simply insufficient to establish a *Brady* violation. *Chenault*, 495 Mich at 150; see also *United States v Agurs*, 427 US 97, 109-110; 96 S Ct 2392; 49 L Ed 2d 342 (1976).

Accordingly, we conclude that law enforcement's failure to test the baseball bat for fingerprints did not constitute a *Brady* violation or deprive defendant of his constitutional right to due process.

## C. PROSECUTORIAL MISCONDUCT

Defendant additionally argues that he was deprived of his constitutional right to a fair trial based on several instances of alleged prosecutorial misconduct. We disagree.

This issue was not raised before or decided by the trial court. Thus, it is also unpreserved for appellate review. *McCrady*, 244 Mich App at 29. Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *McNally*, 470 Mich at 5; *Carines*, 460 Mich at 764. "[R]eversal is only appropriate when the plain error that affected substantial rights seriously affected the fairness, integrity, or public reputation of the proceedings or when the defendant shows actual innocence." *Pipes*, 475 Mich at 283 (citation and internal quotation marks omitted).

A defendant is entitled to a fair trial. US Const, Am XIV; Const 1963, art 1, § 17. "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the resulting conviction a denial of due process." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and a prosecutor's remarks in context." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). "[T]he propriety of a prosecutor's remarks will depend upon the particular facts of each case" and "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. "[O]therwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense." *Id*.

On appeal, defendant takes issue with the following portion of the prosecutor's rebuttal argument:

> Thank you, your Honor. You know, I've been a Prosecutor for over 20 years and I'm just sick and tired of hearing the fingerprint argument. This is not even a drug case, but defense is throwing out everything possible and kitchen sink when we hear the fingerprint argument. The fingerprint argument doesn't even apply in this case. You heard the Chief [police officer] said he can't get fingerprints off here. It's a bat that's been touched by many, many people. It's not going to show anything.

That is a classic . . . defense tactic to throw out a red herring, make someone on the jury say, "Oh, no fingerprints." Remember I asked this in voir dire? I said, "We're not going to have fingerprints. Are you going to require the Prosecution to have fingerprints to prove the case?" Why did I ask that? Because I've heard this argument over and over again just like the blood evidence. You don't need to . . . send it to the lab. This is not a case like that. It's not a . . . drug possession case and what attorneys say in closing argument is not evidence."

According to defendant, this statement constituted prosecutorial misconduct requiring reversal because the prosecutor "impli[ed] that [defendant's] case is not worthy of the same investigation as a drug case" and because the prosecutor "impermissibly made direct attacks on opposing counsel."

Defendant also takes issue with the following additional portion of the prosecutor's rebuttal argument:

Remember I said, "Who's on trial in this case?" You all agreed it's only the defendant. You know, it's not the Police . . . looking at the police work . . . whether they should have done finger print work. No. Attacking their work investigating. They are not on trial. Other witnesses . . . Sharon Payne. She's not on trial.

According to defendant, this statement represents the prosecutor's "attempt[] to shift the burden" onto defendant.

Defendant's arguments fail for a variety of reasons. First, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The jury was properly instructed that the arguments of the attorneys were not and should not be considered as evidence, and defendant makes no attempt to overcome this presumption. "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Callon*, 256 Mich App at 329-330. Any prejudice that was not alleviated by the instructions provided by the trial court could have been alleviated by additional instruction.

Moreover, reviewing the prosecutor's remarks in context, *Callon*, 256 Mich App at 330, we discern no constitutional violation. The prosecutor responded directly to defense counsel's argument. Defense counsel argued as follows:

If [defendant's] fingerprints are on the bat, Prosecutors got a much better case. Much harder for me to argue with the fact he had the bat. What if his fingerprints aren't on the bat? What if [indecipherable] off the bat? Not all material is easy to get fingerprints off of, but it's not impossible. You've got to save it and send it to the State Police. You have the lab do it.

They can't come out with fingerprints, that's fine. They come out with fingerprints that are EMT people that arrive on the scene later that's fine, they didn't have anything to do with it. They come out with Sharon's fingerprints . . . well, who knows exactly where this bat is? My client doesn't.

-6-

Defense counsel continued by explaining that the facts as presented by the prosecution and victims were illogical. It is apparent that the prosecutor's remarks were made in direct response to defense counsel's argument that the prosecution should have tested the baseball bat for fingerprints. Again, "otherwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense." *Id*. Further, these remarks do not, as defendant contends, reflect "simply unacceptable" "direct attacks on opposing counsel." We also reject defendant's argument that by stating that law enforcement and other witnesses were not on trial—a completely accurate statement—the prosecutor somehow convinced the jury that defendant was required to prove his innocence. Finally, even if we assume that the remarks discussed above constituted prosecutorial misconduct, reversal is nevertheless unwarranted. "[R]eversal is not warranted [when] the alleged error was forfeited and did not result in the conviction of an actually innocent defendant, or seriously affect the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence." *Id*. at 331. Defendant has not demonstrated either to be the case on appeal.

Accordingly, we conclude that the prosecutor's remarks at issue were not improper when reviewed in context and did not deprive defendant of his constitutional right to a fair trial.

## D. SENTENCING

Finally, defendant raises several arguments relating to the sentences and costs imposed by the trial court.

### 1. JUDICIAL FACTFINDING AND OV SCORING

Defendant argues that he is entitled to resentencing because the trial court considered facts not found by a jury or admitted by defendant in scoring various OVs 3, 4, 7, 10, and 19. This issue was not raised by defendant before the trial court. Thus, it is unpreserved, *McCrady*, 244 Mich App at 29, and reviewed for plain error, *McNally*, 470 Mich at 5; *Carines*, 460 Mich at 764. In *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines are unconstitutional to the extent that they require judicial fact-finding beyond facts that are admitted by a defendant or found by a jury. Accordingly, it explained, plain error exists when the facts admitted by a defendant or found by a jury are insufficient "to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at 394. When plain error exists, a remand to the trial court for a hearing pursuant to *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), is required to allow the trial court to determine whether, in light of the advisory nature of the sentencing guidelines, it would have imposed a materially different sentence. *Id*. at 396-397. If so, resentencing is required. *Id*. Here, the parties agree that that a remand for a *Crosby* hearing is appropriate. Thus, we remand this matter for a *Crosby* hearing under *Lockridge*. On remand, pursuant to *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 11-12, defendant is provided with an opportunity to avoid resentencing by promptly notifying the trial court that resentencing will not be sought.

### 2. COURT COSTS

Lastly, defendant argues that the trial court erred in imposing $500 in court costs. In this case, the trial court ordered defendant to pay, in pertinent part, $500 in court costs. For the first time on appeal, defendant claims that this portion of his judgment of sentence must be vacated in light of our Supreme Court's decision in *People v Cunningham*, 496 Mich 145, 154; 852 NW2d 118 (2014) (holding that MCL 769.1k(1)(b)(ii), as written at the time, did not authorize trial courts to impose costs unless specifically authorized to do so by the Legislature for that particular offense). However, since the *Cunningham* decision, our Legislature has amended MCL 769.1k(1)(b)(ii) to provide for all fines, costs, and assessments ordered under MCL 769.1k before June 18, 2014 (the date *Cunningham* was decided), and after October 17, 2014 (the date the amendatory act became effective). See 2014 PA 352; see also *People v Konopka (On Remand)*, 309 Mich App 345, 357-358; 869 NW2d 651 (2015). Accordingly, because defendant was sentenced on November 13, 2014, i.e., after October 17, 2014, the trial court was permitted to impose court costs under MCL 769.1k(1)(b). Nevertheless, we remand this matter as required by *Konopka*, 309 Mich App at 359-360, so that the trial court may establish a factual basis for the costs assessed.

## III. CONCLUSION

In sum, we conclude that there was sufficient evidence to support defendant's resisting and obstructing and resisting and obstructing causing injury convictions, that law enforcement's failure to test the baseball bat for fingerprints did not constitute a *Brady* violation, and that the remarks made the prosecutor did not constitute prosecutorial misconduct or deprive defendant of a fair trial. We therefore affirm defendant's convictions. We also affirm the trial court's assessment of costs but remand so that the trial court may establish a factual basis for the costs assessed. Finally, we also remand this matter for a *Crosby* hearing as discussed above.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien