*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KEANTE MARTEZ KIYA,

      Defendant-Appellant.

UNPUBLISHED
April 23, 2019

No. 340965
Jackson Circuit Court
LC No. 16-005352-FH

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant, Keante Kiya, appeals as of right his jury trial conviction of delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*). The trial court sentenced Kiya, as a second offender pursuant to MCL 333.7413, to a term of 8 to 40 years' imprisonment. Because the prosecutor's repeated improper remarks denied Kiya a fair and impartial trial, we reverse.

## I. BASIC FACTS

On July 20, 2015, an undercover police officer purchased 0.072 grams of heroin from an individual she identified as Kiya. At trial, the defense theory was that the officer had misidentified Kiya as the individual who sold her heroin.

## II. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Kiya argues that he was denied his constitutional right to a fair trial by repeated prosecutorial misconduct. This issue is unpreserved because Kiya did not contemporaneously object and request a curative instruction for the alleged prosecutorial misconduct. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of constitutional error are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. Generally, in order to

satisfy the third requirement, the defendant must show "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Additionally, when reviewing an unpreserved claim of prosecutorial misconduct, reversal is not warranted if a curative instruction could have alleviated the prejudicial effect of the improper prosecutorial statement. *People v Callon*, 256 Mich App 312, 329-340; 662 NW2d 501 (2003). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (quotation marks, alterations, and citation omitted).

## B. ANALYSIS

It is well established that "[a] prosecutor has the responsibility of a minister of justice, not simply that of an advocate." *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003). Thus, the test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). We review claims of prosecutorial misconduct on a case-by-case basis, "examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003) (quotation marks and citation omitted). "[T]he propriety of a prosecutor's remarks will depend upon the particular facts of each case." *Callon*, 256 Mich App at 330. Relevant to this case, it is well established that a prosecutor may not "urge the jury to convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237. By interjecting such prejudices to the jury, the prosecutor improperly asks the jury to convict the defendant not on the basis of his or her individual guilt or innocence, but because of the need to protect the community from individuals like the defendant and from crimes such as those the defendant stands accused of committing. See *Dobek*, 274 Mich App at 63-64 ("A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence.").

The prosecutor began his opening statement as follows:

> You know, as an Assistant Prosecutor I get asked often, what's the biggest problem with Jackson? And I don't even have to hesitate. I mean it easily comes to my mind. Heroin. Not a single question about it. It affects people's lives every single day. You've heard how many people's lives it affected just in the jury pool.

> And that's the reason why we are here today, because the defendant in this case is one of the people that's selling that poison to the people on the streets.

This argument constitutes plain error for a number of reasons. In the above statement, the prosecutor primed the jury to consider the case in light of the heroin crisis plaguing Jackson, Michigan. In doing so, he used the prestige of his office to highlight the problem, indicating that as a prosecuting attorney he did not even have to hesitate to know that the greatest threat to the Jackson community was heroin. See *People v Bahoda*, 448 Mich 261, 286; 531 NW2d 659 (1995) (stating that it is improper for a prosecutor to use the prestige of his or her office to inject personal opinion into the defendant's trial). The prosecutor went further, directing the jury's

attention back to the voir dire it had just sat through and reflecting on the numerous jurors who recounted how heroin had negatively affected their lives or the lives of people that they knew. The prosecutor closed out his appeal to the jury's civic duty by linking Kiya directly with the broader problem in the community, stating that Kiya was one of the people selling poison on the streets.

Thereafter, near the beginning of his closing argument, the prosecutor reiterated his improper civic-duty argument, stating:

> All right. It's funny, I was talking to my kids the other day, I have three young kinds and we were going over some of the things that scare them like monsters under the bed, things in the closet, things like that and I—I started thinking about, God, you know, I'm forty years old and there's not a whole lot that scares me anymore.

> But heroin does. Heroin terrifies me. I sit here everyday and see something involving heroin. Everyday somebody is dying of heroin. It affects everybody. And as I mentioned before, this gentleman over here is selling that poison on our streets to make some money. Twenty dollars here and there.

Again, the prosecutor improperly used the prestige of his office to voice his personal opinion, stating that as "I sit here everyday" he sees "something involving heroin," which kills someone every day. This time, instead of referring the jurors to what they personally observed during voir dire, he reflected on how heroin terrified him as a father of three young children. Thus, he again implicitly urged the jurors to do the right thing and help clean up the community by ensuring that drug dealers faced justice so that the children would have a safe place in which to grow up. And once more, the prosecutor drew a direct link between Kiya and the prevalent and deadly danger heroin plaguing the community.

Finally, at the close of his rebuttal argument, the prosecutor urged the jury to do the right thing, arguing:

> [Kiya] is what I like to call a dealer of death, because that's what these heroin dealers are, they're—they're dealing out death.

> People are dying for it everyday and I think it's time that they're held accountable. And I ask that you find him guilty.

These statements, although significantly shorter than his earlier appeals to the jury, constitute the most flagrant of the improper comments. The prosecutor once more directly linked Kiya to the heroin crisis, but this time he suggested that Kiya was dealing out death, not just poison that was killing others. Then, he proclaimed that everyone who deals heroin should *finally* be held accountable. The prosecutor's choice of words suggested to the jury that, up to this point, the "dealers of death," i.e., individuals who sell heroin, were not being held accountable. Then, the prosecutor asked that Kiya, as one of the "dealers of death," be convicted.

Viewed in context, the prosecutor did not make an inadvertent and isolated improper comment. See *Unger*, 278 Mich App at 239 (holding that reversal is not warranted if the improper prosecutorial argument was brief, isolated, and did not affect the outcome of the defendant's trial); see also *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001) (holding that reversal was not warranted when the prosecutor's improper comment was isolated, not blatant, and not so inflammatory as to cause prejudice to the defendant). Instead, during this one-day trial, over the course of approximately three hours, the jury heard the prosecutor repeatedly expound on the danger heroin posed to the community that they lived in. It was both the first thing it heard from the prosecutor, and the last thing it heard before receiving its instructions from the court. This Court previously has recognized "the seriousness of the drug problem," recognizing that "it touches the lives of many average citizens, generating much fear and dismay." *People v Williams*, 65 Mich App 753, 756; 238 NW2d 186 (1975). In doing so, this Court stated:

> We recognize, too, that jurors share the average citizen's desire to eliminate the narcotics traffic. In such an emotion-laden situation, sensibilities are easily inflamed. Because emotional reaction to social problems should play no role in the evaluation of an individual's guilt or innocence, prosecutors must exercise special care to avoid arousing jurors' emotions concerning such issues. [*Id.*]

Here, however, rather than taking special care to avoid arousing the jurors emotions, the prosecutor took special care to deliberately arouse those emotions. That was manifestly improper. And, given the pervasive nature of the comments, we conclude that it affected the outcome of the trial.

In doing so, we acknowledge that the prosecution presented sufficient evidence of Kiya's guilt. The undercover officer testified that she personally observed Kiya handing her the heroin in exchange for $20. However, her identification testimony, although sufficient to convict Kiya, was impeached by Kiya's lawyer, who elicited testimony showing that the transaction lasted only approximately ten seconds. Additionally, the officer testified that she could not personally remember details from Kiya's appearance at the time of the transaction, such as whether he was wearing a hat or glasses. Further, the basis for identifying Kiya came from the officer's observation of a prior booking photograph after the transaction and from the fact that the police computer showed that the phone number used to set up the transaction was linked to Kiya. There was also evidence that the house where the transaction took place was searched pursuant to a warrant. Kiya was not identified by name in the warrant despite the officer's testimony that, at that time, she had identified Kiya by name. Additionally, the search warrant turned up no evidence linking Kiya to the house. There was also no evidence of drug activity in the home. Thus, the evidence can be viewed as supporting both the prosecution and the defense theories, but neither view of the evidence is particularly stronger than the other. Therefore, viewing the entirety of the record, Kiya has satisfied his burden of showing prejudice, i.e. outcome-determinative error based on the prosecutor's deliberate, repeated, detailed, and inflammatory prosecutorial misconduct.

The jury instructions did not cure the prejudice. The court instructed the jury to "not let sympathy or prejudice influence" its decision. The jury was also instructed that it was to decide the case based only on properly admitted evidence and that "[t]he lawyers' statements are

arguments are not evidence." However, the jury was also instructed that it "should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." Here, the jury's own "common sense" likely included that there was a problem with heroin in the community, and, given the nature of the prosecutor's improper comments, the jury could have believed that it was "general knowledge" that heroin was causing death on a daily basis and that it was time to hold heroin dealers accountable, starting with Kiya. Thus, rather than directing the jury to disregard the prosecutor's impermissible civic duty arguments, in this case, the jury instructions instead suggested that the jury was free to consider the prosecutor's comments because, although not backed by evidence, they were backed by common sense and general knowledge. Jurors are presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Therefore, we must presume that the jury used its common sense and general knowledge about heroin in their community. Information that, although not relevant to Kiya's guilt or innocence, was provocatively introduced by the prosecution at the beginning of his opening statement and closing argument and at the conclusion of his rebuttal argument. The jury instructions, therefore, did not cure the error. *Id*.

Furthermore, we can conceive of no instruction that would be sufficient to alleviate the prejudice and allow for a fair trial. See *Callon*, 256 Mich App at 329-330. Here, an instruction to disregard the civic-duty argument would not negate the underlying truth of the inappropriate comments, and, as such, it would be difficult for the jury to simply disregard, even if instructed to do so.[1] Moreover, given the strong emotions aroused by the prosecutor's improper remarks, only a strongly worded instruction would be sufficient, and it is reasonable to conclude that such a chastisement of the prosecutor would sway the jury in the opposite direction, which would also affect the fairness of the trial, albeit in Kiya's favor.[2]

---

[1] Unlike most improper comments, the public duty argument here may very well be true and therein lies the problem. Stating a legitimate reason to remove a scourge from the community without basing it on the evidence of the particular defendant is the very basis for why a public duty argument is impermissible.

[2] Our Supreme Court recently noted that in some circumstances no jury instruction can erase the prejudice caused by judicial misconduct. *People v Stevens*, 498 Mich 162, 177-178; 869 NW2d 233 (2015). In that case, the fact that the judicial misconduct was "excessive and imbalanced," led the Court to conclude that a single, general instruction could not alleviate the prejudice caused by the misconduct. *Id*. at 190. Although this case involves prosecutorial misconduct as opposed to judicial misconduct, we discern no significant difference between the two types of misconduct so as to render *Stevens* inapplicable for the general proposition that not all errors can be cured by a jury instruction and that more pervasive and excessive misconduct outweighs the curative effect of a single, general instruction. See also See *Abraham*, 256 Mich App at 279 (recognizing that in some instances the prejudicial effect of prosecutorial misconduct can be "so severe" that it cannot be cured by a jury instruction).

Finally, regardless of whether Kiya's actual innocence can be earnestly debated, we conclude that the error in this case seriously affects "the fairness, integrity, or public reputation of judicial proceedings independent of [Kiya's] innocence." *Carines*, 460 Mich at 763. Again, this is not an inadvertent and isolated instance of prosecutorial misconduct. Given the frequency and detail of the comments, it is plain that the prosecutor's strategy in this case included repeatedly reminding the jury of the danger heroin posed to the community and urging the jury to hold Kiya, a dealer of death, accountable for the daily deaths and misery caused by heroin. Allowing such textbook public-duty arguments invites prosecutors across Michigan to continue to use such impermissible arguments without giving due regard to their special role in the criminal justice system.[3]

Reversed.

/s/ Michael J. Kelly
/s/ Deborah A. Servitto

---

[3] Given our decision, we decline to address Kiya's challenge to the court's decision to impose a sentence of 8 to 40 years.