*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LIBERTY ANNE WALDEN,

Defendant-Appellant.

UNPUBLISHED
February 18, 2021

Nos. 350422; 350423
Washtenaw Circuit Court
LC Nos. 18-000644-FH;
18-000660-FC

Before: M.J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant, Liberty Anne Walden, in Case No. 350422, appeals as of right her convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c (person who is a blood relative engaged in sexual contact with a person under 13 years of age), and in Case No. 350423, appeals her convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (person who is a blood relative engaged in sexual penetration with a person under 13 years of age), and two counts of CSC-II, MCL 750.520c (person who is a blood relative engaged in sexual contact with a person under 13 years of age). We affirm.

## I. BACKGROUND FACTS

Two cases arose from separate incidents in which defendant sexually assaulted her daughter, AH, when 10 and 11 years old. Defendant and AH's father, Christopher Hawk (Hawk), divorced during 2008. Following the divorce, AH and her siblings, KH and RH visited defendant on weekends. AH first disclosed sexual abuse after an incident at a Kroger store. Defendant and a male friend picked up the children on Friday evening, December 8, 2017, for a weekend visit with defendant. They stopped to pick up groceries at a local Kroger store. The children noticed that defendant smelled of alcohol. At the Kroger store, defendant had difficulty walking and

---

[1] This Court consolidated defendant's two appeals to advance the efficient administration of the appellate process. *People v Walden*, unpublished order of the Court of Appeals, entered September 10, 2019 (Docket Nos. 350422; 350423).

needed KH's assistance but fell down and dragged KH down with her. Defendant sent KH and RH to select groceries while AH remained with defendant. AH testified that defendant came up behind her and fondled her breasts and vagina with her hands over AH's clothes while telling AH that she could have anything she wanted. When the other children returned, defendant stopped.

After leaving the Kroger store, AH became distraught, defendant and KH argued, and ultimately defendant dropped the children off back at their father's apartment. The next Monday, at school, AH confided with a respected teacher about the Kroger store incident which prompted the school guidance counselor to contact Child Protective Services which made a referral to the Child Advocacy Center where AH submitted to a forensic interview in which AH disclosed the Kroger incident and that on weekend visits with defendant, defendant had sexually abused her by inappropriately touching her breasts and vaginal area and once digitally penetrated her vagina. AH also disclosed that defendant's former boyfriend came into AH's bedroom at defendant's house and vaginally penetrated AH with his penis. The Child Advocacy Center referred AH to Dr. Bethany Mohr, a pediatric physician and clinical associate professor of the University of Michigan where she served as the Director of the Child Protection Team for a physical examination for diagnosis and potential treatment of the sexual abuse.

Detective Jessica Lowry of the Ypsilanti Police Department and then Detective Christopher Garrett, of the Ann Arbor Police Department, jointly investigated the allegations of incidents of sexual assaults within their respective jurisdictions. Based upon their investigation, the prosecution charged defendant with one count of CSC-I and multiple counts of CSC-II, and the prosecution charged defendant's boyfriend with CSC-I and CSC-II for sexually abusing AH.

Defendant's boyfriend ultimately pleaded no contest to CSC-II pursuant to a plea agreement.

Defendant, however, chose to be tried by a jury. At the conclusion of her third trial, the jury found defendant guilty of one count of CSC-I and four counts of CSC-II.[2] Defendant was sentenced to not less than 25 years nor more than 40 years on her CSC-I conviction and to not less than 29 months nor more than 15 years on her CSC-II convictions, all to be served concurrently. Defendant now appeals.

## II. PROPRIETY OF DR. MOHR'S TESTIMONY

Defendant first argues that the trial court erred by allowing Dr. Mohr to vouch for AH's credibility by implying that the abuse occurred and that defendant was guilty, and by allowing Dr. Mohr to testify regarding her hearsay knowledge of AH's allegation of recent touching by defendant, victims' late disclosure of sexual assault, patients' experience of suicidal ideation,

---

[2] Defendant's first trial was in Case No. 18-000660-FC in November 2018. After submission of the case, the jury was unable to reach a verdict and a mistrial was declared. Defendant's second trial was in Case No. 18-000644-FH in April 2019. During the trial, defense counsel became seriously ill and hospitalized and unable to complete the trial and a mistrial was declared. Defendant's third trial combined the two cases, with the consent of all parties, and was tried to verdict in June 2019.

which defendant argues were matters outside the scope of Dr. Mohr's physical examination and expertise. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). In this case, defendant preserved her claims of error in part regarding the admissibility of Dr. Mohr's testimony about suicidal ideation and AH's allegation of recent touching, but defendant did not preserve for appeal her allegations of error regarding admissibility of Dr. Mohr's testimony on the ground that she vouched for AH's credibility or implied that the abuse occurred and that defendant was guilty, or that testimony regarding suicidal ideation and delayed disclosure of abuse on the ground that such testimony exceeded the scope of her expertise.

## A. STANDARDS OF REVIEW

We review for an abuse of discretion the trial court's decision whether to admit evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014) (citation omitted). We review unpreserved evidentiary issues for plain error affecting the defendant's substantial rights. In *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999) (quotation marks, alteration, and citations omitted) our Supreme Court clarified the appropriate standard of review:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence.

## B. ANALYSIS

Under MRE 702, expert witness testimony is permitted,

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). Jurors, not expert witnesses, make credibility determinations. *Id*. at 348-349; *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

A physician or medical expert may not opine whether a complainant was sexually assaulted when the expert's opinion is based on the expert's assessment of the complainant's truthfulness or when the expert's opinion is based only on what the complainant told the medical expert. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). "Nonetheless, an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Id*. Although an expert may not testify that sexual abuse occurred and may not vouch for the veracity of a victim or whether the defendant is guilty,

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995).]

In *Peterson*, our Supreme Court held

> [T]he prosecution may present evidence, if relevant and helpful, to generally explain the common postincident behavior of children who are victims of sexual abuse. The prosecution may, in commenting on the evidence adduced at trial, argue the reasonable inferences drawn from the expert's testimony and compare the expert testimony to the facts of the case. Unless a defendant raises the issue of the particular child victim's postincident behavior or attacks the child's credibility, an expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child. Such testimony would be improper because it comes too close to testifying that the particular child is a victim of sexual abuse. [*Id*. at 373-374.]

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay, generally, is not admissible. MRE 802. MRE 803(4) pertains to a hearsay exception for statements that a declarant makes for the purpose of medical treatment or diagnosis. MRE 803(4) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(4) Statements made for purposes of medical treatment or medical diagnosis in connection with treatment. Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

Our Supreme Court concluded that the rationale for the hearsay exception under MRE 803(4) involves "(1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992).

Factors related to trustworthiness guarantees surrounding the actual making of the statement include: (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325 (citations omitted).]

Further, corroborating evidence, such as physical evidence of assault or resulting diagnosis and treatment, can strengthen the reliability of the evidence and support whether the statement was made for the purpose of receiving medical treatment and care. *Id*. at 325-326. In *Meeboer*, our Supreme Court clarified that in cases of suspected or alleged child abuse, a trial court should consider the totality of the circumstances to determine the trustworthiness of a child's statement and whether the child understood the importance of telling the treating physician the truth. *Id*.

Regarding the reasonable necessity of the statements, information regarding the declarant's physical and psychological injuries can be reasonably necessary for medical diagnosis and treatment of the declarant's trauma. *Id*. at 328-329. Medical diagnosis and treatment of a victim involve treatment of her medical, physical, developmental, and psychological well-being. *Id*. at 329. Questions and discussion regarding the identity of the perpetrator may be reasonably necessary as it relates to the diagnosis and treatment of diseases, pregnancy, and the psychological impact of the abuse. *Id*. at 328-329. Disclosing the identity of the perpetrator itself can be a portion of the injury that a victim experiences from a sexual assault. *Id*. at 329.

In this case, the record reflects that AH's father and grandmother took AH to Dr. Mohr for a physical examination for diagnosis and treatment for alleged sexual abuse. Dr. Mohr obtained a medical history from Hawk, and a nurse practitioner spoke with AH to obtain a medical history

from her before Dr. Mohr conducted the physical examination. The record also indicates that Dr. Mohr familiarized herself with AH's forensic interview report to ascertain background information to assist her in diagnosing and treating AH. Dr. Mohr explained that a patient's medical history and information obtained from the patient assist in determining whether the patient potentially has been exposed to sexually transmitted diseases and provide insight as to the patient's mental health which is necessary information to ensure that the examination itself is not a source of trauma for the patient. Dr. Mohr examined AH's genital area to ascertain whether any physical evidence existed of trauma or injury.

At trial, Dr. Mohr testified about her extensive training and experience in diagnosing and treating sexual assault victims. Dr. Mohr generally described the standard protocol for obtaining a patient's complete history for diagnosis and treatment purposes in cases of alleged sexual abuse. Dr. Mohr described how she applied the standard protocol in this case. She reviewed AH's medical history, obtained information from AH regarding her allegations and her current mental health to ascertain whether AH felt safe and comfortable to undergo a physical examination of her genital area. Although AH's medical history indicated that she previously experienced suicidal ideation which resulted in her hospitalization, Dr. Mohr found that AH did not present such at the time of her appointment. Dr. Mohr, therefore, determined it appropriate to perform a physical examination of AH. Dr. Mohr testified that AH's physical examination did not disclose any recent trauma or evidence of past injury in her genital area. Dr. Mohr explained that in cases of late disclosure she typically found no physical evidence of abuse. Dr. Mohr testified that she knew of AH's allegations of fondling by defendant but explained that such conduct would not result in physical evidence of abuse nor would it lead to sexual transmission of disease.

Close examination of Dr. Mohr's testimony does not substantiate defendant's claims of error. Dr. Mohr did not vouch for AH's credibility either directly or impliedly. Dr. Mohr's testimony reveals that she did not render any opinions regarding the validity of AH's allegations of sexual abuse, nowhere stated that AH actually suffered sexual abuse, and made no express or implied mention of defendant's guilt. Dr. Mohr did not state that she believed AH or that AH was trustworthy, nor did she testify that a sexual assault occurred. Further, Dr. Mohr did not testify or offer an opinion regarding defendant's guilt. Dr. Mohr did not explain AH's behavior or testify whether AH's behavior and statements were consistent with a victim of sexual abuse. Dr. Mohr's testimony provided the jury necessary general information regarding child sexual abuse from which the jury could make informed determinations of fact in this case. Further, Dr. Mohr's testimony regarding the lack of physical evidence of sexual assault of AH supported defendant's position that defendant never committed the charged offenses, and AH simply falsely accused defendant.

The trial court did not err by permitting Dr. Mohr to testify in this case. Dr. Mohr appropriately relied on AH's explanation of her allegations of digital and penile penetration to guide her medical interaction with AH. Based on AH's description of her allegations, Dr. Mohr determined the necessity of conducting a physical examination of AH's genital area. Dr. Mohr did not opine that the information provided to her constituted true and accurate information. Rather, she considered the information only for its diagnostic use and consideration of proper treatment. Therefore, the information was not hearsay but fell within the MRE 803(4) hearsay exception for statements that a declarant makes for the purpose of medical treatment or diagnosis. Dr. Mohr's testimony regarding suicidal ideation likewise was not objectionable because AH had

a history of such which Dr. Mohr rightly considered to evaluate AH's ability to endure a physical examination of her genital area so as not to inflict AH with unnecessary and perhaps dangerous mental trauma. Dr. Mohr's testimony regarding her knowledge of AH's allegations of fondling also was not objectionable because the information was part of AH's history necessary for proper diagnosis and treatment, and the testimony generally enlightened the jury by clarifying that such conduct would not leave physical evidence of abuse or transmit sexually transmitted diseases. Dr. Mohr did not testify that such conduct actually happened nor did she opine that defendant was guilty of such conduct.

Dr. Mohr's testimony did not exceed the permissible limits of an expert witness in a case involving alleged sexual abuse. Dr. Mohr's testimony regarding sexual assault victim's behavior permitted the jury to determine whether AH's behavior was inconsistent with that of abuse victims. Further, Dr. Mohr testified after defendant's attack on AH's credibility and clarified that AH's behavior, such as late disclosure and suicidal ideation, could be considered by the jury as consistent with other victims of sexual abuse. See *Peterson*, 450 Mich at 352-353.

Review of Dr. Mohr's testimony and the trial court's rulings on defendant's objections does not support defendant's contentions of error because Dr. Mohr neither vouched for AH's credibility nor offered any opinion testimony that AH actually had been sexually abused at any time. Dr. Mohr's testimony did not expressly state or imply that AH suffered sexual abuse or that defendant committed the charged offenses. Defendant has failed to demonstrate that Dr. Mohr's testimony was inadmissible or that she vouched for AH's credibility. The admission of her testimony regarding suicidal ideation and late disclosure did not constitute plain error. See *Thorpe*, 504 Mich at 255; *Carines*, 460 Mich at 763; *Peterson*, 450 Mich at 352-353. Accordingly, defendant's claims of error regarding the admissibility of Dr. Mohr's testimony lack merit.

## III. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution committed prosecutorial misconduct by eliciting testimony from Dr. Mohr regarding allegations of fondling to establish that defendant fondled AH after alleged acts of sexual penetration and regarding suicidal ideation as a byproduct of sexual abuse to bolster AH's testimony. We disagree.

To preserve for appeal an issue of prosecutorial misconduct the defendant must contemporaneously object and request a curative instruction, or move for a mistrial. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). In this case, defendant did not contemporaneously object and request a curative instruction, nor did she move for a mistrial. Accordingly, defendant failed to preserve this issue for appeal.

### A. STANDARD OF REVIEW

In *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008) (quotation marks and citations omitted), this Court summarized the applicable standard of review as follows:

Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice. Because the challenged prosecutorial statements in this case were not

preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error. Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect. Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions.

## B. ANALYSIS

In general, prosecutors have "great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW 2d 659 (1995) (quotation marks and citation omitted); *Unger*, 278 Mich App at 236. Further, the prosecution's "good-faith effort to admit evidence does not constitute misconduct." *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). The prosecution's statement must be "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). The prosecution may not vouch for the credibility of a witness to the effect that he or she has some special knowledge that the witness is testifying truthfully. *Bahoda*, 448 Mich at 276. The prosecution also may not comment on his or her personal knowledge or belief regarding the truthfulness of a witness. *People v Bennett*, 290 Mich App 465, 478; 802 NW2d 627 (2010). The prosecution, however, is permitted to comment on his or her own witnesses' credibility during closing argument "especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004) (citation omitted). Further, the prosecution "is free to argue from the evidence and its reasonable inferences in support of a witness's credibility." *Bennett*, 290 Mich App at 478. "A prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief . . . and is not required to state inferences and conclusions in the blandest possible terms." *People v Launsbury*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (citations omitted).

When reviewing a claim of prosecutorial misconduct, this Court examines the pertinent portion of the record and evaluates the prosecution's remarks in context. *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). The propriety of the prosecution's remarks depends on the particular facts of each case. *Id*. The prosecution may argue the evidence and any reasonable inferences arising from the evidence. *Id*.

In this case, the record reflects that the prosecution's questions to Dr. Mohr were well within the permissible bounds. The prosecution did not elicit opinion testimony from Dr. Mohr regarding the truthfulness of AH's allegations, the veracity of her testimony, whether AH had in fact been sexually assaulted, or regarding defendant's guilt. The prosecution asked Dr. Mohr regarding her expertise and what information she considered as part of her examination, diagnosis and treatment of AH. The prosecution did not question Dr. Mohr regarding the veracity of AH's description of events and Dr. Mohr did not offer any opinion that AH's statements to her required belief. Dr. Mohr provided general information regarding sexual assault victim's behavior, information from which the jury could analyze the evidence and determine the facts. Dr. Mohr's testimony did not intimate that defendant committed the charged offenses. The jury had to decide

which witnesses to believe and the prosecution urged the jury to decide the facts based upon the evidence. *Thomas*, 260 Mich App at 455.

The prosecution did not commit misconduct by eliciting Dr. Mohr's testimony regarding her knowledge of AH's allegations of fondling because the testimony arose after defendant attempted to establish that Dr. Mohr misunderstood the alleged sequence of alleged sexual assaults in an effort to cast doubt upon AH's testimony regarding when the incidents occurred and if they occurred. Dr. Mohr affirmed that she knew of the allegations and the timeline of alleged events but clarified that the alleged fondling could not corroborate or establish the occurrence of sexual assault because such conduct could not be verified by physical evidence. Further, Dr. Mohr explained that fondling could not serve as the source of sexually transmitted diseases.

The prosecution also did not commit misconduct by eliciting testimony regarding suicidal ideation. Dr. Mohr testified that, in her experience, some sexual assault victims experience suicidal ideation and knowledge of a history of such helped Dr. Mohr determine the diagnostic approach to take to ensure that the alleged victim would feel safe and secure during a physical examination so as to minimize the trauma, if any, of such an examination. Dr. Mohr testified that she knew of AH's medical history and previous suicidal ideation which caused her to inquire regarding whether AH presently experienced such ideations before proceeding with the physical examination. Dr. Mohr's conduct in this regard was proper and the prosecution cannot be said to have committed misconduct by eliciting such testimony in the context of this case. Defendant, therefore, has failed to establish the existence of plain error affecting defendant's substantial rights. Even if the trial court could be said to have erred in this regard, defendant has failed to establish that, as a result of such error, the jury convicted an innocent defendant. Further, defendant cannot establish that the alleged error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

Moreover, defendant failed to contemporaneously object and timely seek a curative instruction, which, if the prosecution committed misconduct, could have cured it. Defendant has failed to establish that plain error occurred requiring reversal because she cannot demonstrate that the alleged plain error resulted in the jury's conviction of an actually innocent defendant nor that the alleged error affected the fairness, integrity, or public reputation of judicial proceedings. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ James Robert Redford

-9-